```
C2fzterc                        Conference
```

 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    IN RE:  TERRORIST ATTACKS,

 4
                                        03 MDL 1570 (GBD)(FM)
 5
      ------------------------------x
 6
                                        February 15, 2012
 7                                      2:15 p.m.

 8    Before:

 9                         HON. FRANK MAAS,

10                                      Magistrate Judge

11                         APPEARANCES

12    KREINDLER & KREINDLER LLP
           Attorneys for Ashton Plaintiffs
13    BY:  JAMES P. KREINDLER

14    COZEN O'CONNOR
           Attorneys for Federal Insurance Co. Plaintiffs
15    BY:  J. SCOTT TARBUTTON

16    MOTLEY RICE LLC
           Attorneys for Burnett & Eurobrokers
17    BY:  ROBERT T. HAEFELE

18    SPEISER, KRAUSE, NOLAN & GRANITO
           Attorneys for Plaintiffs
19    BY:  CHRISTINA M. FRY

20    ANDERSON KILL & OLICK PC
           Attorneys for Plaintiffs
21    BY:  JERRY S. GOLDMAN

22    BERNABEI & WACHTEL, PLLC
           Attorneys for Al Haraman & Def. Exec. Comm.
23    BY:  ALAN R. KABAT

24    CLIFFORD CHANCE US LLP
           Attorneys for Dubai Islamic Bank
25    BY:  RONI E. BERGOFFEN

C2fzterc                          Conference

1    APPEARANCES:(continued)

2    GOETZ & ECKLAND P.A.
          Attorneys for WAMY
3    BY:   FREDERICK J. GOETZ

4    LAW FIRM OF OMAR T. MOHAMMEDI, LLC
          Attorneys for Defendants
5    BY:   OMAR T. MOHAMMEDI
          SARAH HASAN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C2fzterc                      Conference

1              THE DEPUTY CLERK:  All rise.

2              THE COURT:  Be seated, please.

3              (Case called)

4              MR. KREINDLER:  Good morning, Judge.  Jim Kreindler.

5              THE COURT:  Good afternoon.

6              MR. TARBUTTON:  Good afternoon, your Honor, Scott

7       Tarbutton on behalf of the Federal Insurance plaintiffs

8              MR. HAEFELE:  Good afternoon, your Honor, Robert

9       Haefele from Motley Rice for Burnett and Eurobrokers.

10             MR. GOLDMAN:  Jerry Goldman for the O'Neill plaintiffs

11       and Plaintiffs' Executive Committee.

12             MR. KABAT:  Alan Kabat.

13             MS. BERGOFFEN:  Roni Bergoffen for Dubai Islamic Bank.

14             MR. GOETZ:  Frederick Goetz, WAMY.

15             MR. MOHAMMEDI:  Omar Mohammedi, WAMY.

16             MS. HASAN:  Sarah Hasan, WAMY.

17             THE COURT:  Good afternoon, everyone.

18             Let me begin with the letter concerning scheduling.

19             I recognize that on both sides there were document

20       production issues.  And I also conferred with Judge Daniels.  I

21       don't have a problem with extending the deadline for document

22       production to April 30th, and will in fact do that.

23             Given the amount of disagreement that there's been

24       just with respect to WAMY, I assume that that will be

25       multiplied many times when we get to the stage of motions

C2fzterc                    Conference

```
1   concerning all of the defendants.  So I'm a little concerned

2   about a six-month period for motion practice, although I

3   recognize that the need to translate documents obviously is an

4   issue.  So I wanted to talk a little about that.

5           MR. HAEFELE:  Good afternoon, your Honor.  I don't

6   know what question you have, but I'm happy to address whatever

7   your question is.

8           THE COURT:  Well, defendants want two months, you want

9   six months.  I was thinking about a period like three months,

10  because just like you'll need time to translate documents, I'll

11  need time to resolve these issues.

12          I find that a lot of the discovery issues in this case

13  are a little like pushing on one part of a pillow, only to

14  watch it rise somewhere else.  And I'm not necessarily being

15  critical of either side in terms of saying that.  I just think

16  it's probably the nature of the enterprise we're all engaged

17  in.

18          What I'm thinking about is a three-month period

19  because, in part, that gives us something to shoot for.  If it

20  ends up being unrealistic, we'll deal with that.  But six

21  months will grow a year if this case is any, or past practice

22  in this case is any indication, so.

23          MR. HAEFELE:  Your Honor, the only thing I would say

24  is, it's hard for us to tell exactly how much time we would

25  need for interpretation of the translation of the documents
```

C2fzterc                    Conference

1    until we actually get the documents.  And we're judging it

2    based on what we have gotten so far and the amount of time it

3    has taken not only to translate the documents, but they can't

4    be assessed until they're translated.  So we really based it on

5    that.  That's why we did the six months.  Could I impose upon

6    your Honor to at least give us four months?  And then if, you

7    know, if it turns out that we need more or less, we can adjust

8    it from there.

9              THE COURT:  I think what I'm going to do is make it

10   three months, but recognize that there may be issues of

11   translation.  It may be that we have these motions on some sort

12   of rolling basis.  I haven't fully thought through that.

13             Not only do I want to minimize the pain for all of

14   you, I want to minimize the pain for me, or at least

15   concentrate it in some fixed period.  So why don't we shoot for

16   three months, but feel free to remind me that I said that, you

17   know, I would view liberally requests for an extension of time.

18             MR. HAEFELE:  We will certainly purchase a transcript,

19   your Honor.  Thank you.

20             THE COURT:  Okay.  I guess that brings us to the WAMY,

21   W-A-M-Y, application with respect to plaintiffs' discovery thus

22   far.

23             One of the things that intrigued me was -- and maybe

24   it's accounted for by the difference in the timing of the

25   various letters -- but the plaintiffs' letter says, WAMY, I

C2fzterc                     Conference

1    think it's both WAMYs, WAMY Saudi Arabia and WAMY

2    International, have not produced any documents.  And I thought

3    in the reply letter there was an indication that some documents

4    had in fact been produced; that 1200 documents or 12,000,

5    forgive me, in September was the representation.  And I have a

6    little trouble understanding, just at the outset, how one side

7    could think that WAMY has produced zero documents and how WAMY

8    could be under the impression they produced 12,000.

9            MR. HAEFELE:  Your Honor, I can address that fairly

10   quickly, I think.

11           When we're addressing WAMY Saudi Arabia, the number is

12   zero.  When we're addressing --

13           THE COURT:  Right.

14           MR. HAEFELE:  -- WAMY overall, who are the other part

15   of WAMY, the number's closer to 12 plus 12 -- plus or 12 or

16   13,000 documents.

17           THE COURT:  Okay.

18           MR. HAEFELE:  And by that I believe it's pages not

19   documents.

20           THE COURT:  Okay.  I'm somewhat torn in approaching

21   these issues much the same way that I was when we talked about

22   some of this in April.

23           I recognize that in a case of this size, the rules

24   can't always be blindly applied.  But I do, as I said last

25   time, adhere to the views that Magistrate Judge Grimm cited in

C2fzterc                         Conference

1    Manazia versus Mayflower, namely, that boiler plate objections,

2    such as all the requests are overbroad and unduly burdensome

3    without some specificity is, alone, a violation of Rule 26(g),

4    which requires that objections be interposed in good faith.

5            Notwithstanding that -- and I understand

6    Mr. Mohammedi's desire to have particular responses or

7    particular document productions correlated to particular

8    requests -- but I'm not enamored of the thought of just having

9    a massive word processing exercise.

10           One of the things you complained about, Mr. Mohammedi,

11   in your reply letter, is that the defendants produced, I guess

12   it's in the nature of 14,000 documents.  Yet, they said that

13   that universe of documents all are responsive to 12 of, many

14   more than 12 requests.  And, frankly, I don't understand that

15   complaint.  That, to me, that says that they're saying the

16   documents are responsive to 12 out of some larger number of

17   requests, and, presumably, at some point there will be an

18   answer that as to certain requests either they don't have

19   documents or they'll produce some further documents and further

20   specification.

21           I'm not sure what's wrong with them having told you

22   that the 14,000 documents or pages, I guess, of documents

23   relate to only 12 of your requests at this stage.

24           MR. MOHAMMEDI:  Your Honor, can I address this issue?

25           THE COURT:  Yes.

C2fzterc                    Conference

1              MR. MOHAMMEDI:  Would you mind if I sit down, because

2    I have a bad back?

3              THE COURT:  No.

4              MR. MOHAMMEDI:  I appreciate that, thank you.

5              Our argument is this.  We, the document request that

6    we served on plaintiffs are very specific and very different in

7    the nature.  One is about -- some of them are about specific

8    events, other ones about funding, and others about knowledge.

9              Now, we do believe that plaintiffs have obligation to

10   respond to each one of those documents, not just to say here's

11   12,000 documents and they apply to all of them.

12             THE COURT:  But they gave me and you a chart -- it's

13   Exhibit B to their letter -- which lists particular documents,

14   and I certainly didn't line it all up.  But just looking at the

15   first page of it, they're designating specific documents as

16   responsive to specific requests.

17             I know you say that they've produced a lot of garbage

18   in the nature of newspaper articles and the like, and that may

19   be true.  But at least on Exhibit B, they identified particular

20   documents that they contend respond to particular requests.

21   So, again, I'm not sure what the gripe there is.

22             MR. MOHAMMEDI:  Again, your Honor, the question is

23   this.  I know what the -- what they're producing in terms of

24   the table that they're producing.  It's different from what we

25   see, as far as the obligation which one applies to which.

C2fzterc                        Conference

 1           We can see in form of the table these are really

 2     exactly what they apply to, but when you see them -- when we

 3     look at the documents, they are not responsive to those

 4     requests, so -- and that is the problem.

 5           THE COURT:  But it's, even for WAMY, and certainly

 6     when we get to all of the defendants and the plaintiffs as a

 7     group, it's not going to be feasible for me to go through WAMY

 8     documents 1067 through 1069 and 1070 to 72 to see whether

 9     indeed they're responsive to request number one and the like.

10           But let me turn it around.  Because, as I understand

11     it, WAMY's taking the position that except insofar as it

12     produced documents in September, it doesn't have to designate

13     documents, it can just provide an index and the plaintiffs can

14     go fish in Saudi Arabia.  Do I understand that position

15     accurately?

16           MR. MOHAMMEDI:  No, your Honor.  That's not exactly

17     what I would say.

18           We said that's what we would have those documents

19     available according to whatever the request.  The difference is

20     that our responses to documents are very specific.  We provided

21     table and we provided specific response to the specific

22     request, and then we address those issues with the plaintiff if

23     they want to go to Saudi Arabia, we would have those documents

24     specifically around the same way that's our responses are going

25     to be, so that's how --

C2fzterc                     Conference

```
1           THE COURT:  But are these documents Bates numbered
2    already?  You said in a footnote that you spent, I think it was
3    a million and a half dollars reviewing documents.
4           MR. MOHAMMEDI:  Not me, your Honor.
5           THE COURT:  I'm sorry?
6           MR. MOHAMMEDI:  I reviewed the documents afterwards,
7    but our client spent 1.5 million.
8           THE COURT:  That's what I meant.
9           MR. MOHAMMEDI:  Right.
10          THE COURT:  But does that result in a series of Bates
11   numbered documents so that the plaintiffs know how many pages
12   would be available for them to review if they were in Saudi
13   Arabia?
14          MR. MOHAMMEDI:  They would not have not started to
15   Bates stamp, your Honor.  We want to make sure that they take
16   what they think for whatever we produced to them, they would
17   take the documents that are relevant.  And some document they
18   think that are not do, they do not want to take, then they will
19   keep them there.  So we did not Bates stamp them so far.  We
20   want to make sure that if they want to come and check for those
21   documents, we would Bates stamp them for them.  If they want us
22   to ship those documents to them at their expense, we do, and we
23   Bates stamp them for them.
24          THE COURT:  But the problem is they don't know whether
25   that's a thousand documents or 20 million documents, do they?
```

C2fzterc                    Conference

1              MR. MOHAMMEDI:  It was a room, it was a room full of

2    documents that's, I would say from -- we could not even count

3    them.  There were many documents.  I would say maybe hundred

4    thousand documents at least that's all, 200,000 documents that

5    existed in the room that they put them together for plaintiffs.

6              THE COURT:  Okay.  Well, we'll come back to that.

7              MR. HAEFELE:  Your Honor?

8              THE COURT:  Yes.

9              MR. HAEFELE:  If I could just respond to some of that,

10   just really briefly --

11             THE COURT:  Sure.

12             MR. HAEFELE:  -- before we move on to a different

13   issue, if that's all right with your Honor.

14             THE COURT:  Okay.

15             MR. HAEFELE:  One thing I did want to say, your Honor,

16   is that we -- I don't want to get loss in the semantics of how

17   WAMY is used and continued to use the term "boiler plate" in

18   general objections.

19             I do know at the beginning of our responses, like WAMY

20   did, we included some general objections.  But as to each

21   response or as to each request, we did include specific

22   objections that were included within, within the sub-heading of

23   this, this is the request, this is the response.  There was

24   specific objections there, there was a specific response, and

25   there was also an indication of what documents were responsive.

C2fzterc                    Conference

1              As we updated the, as we updated our responses,

2    unfortunately, I think we resorted to flipping that table, and

3    instead of saying which documents were responsive to a

4    response, we said which -- it starts with this document is

5    responsive to these requests.

6              We'd be happy to shift that and make a table that

7    includes, this is the request, these are all the documents that

8    are responsive, if that would help Mr. Mohammedi to review it.

9    In other words, you can have a table that is --

10             THE COURT:  Yeah, I'm not sure --

11             MR. MOHAMMEDI:  I think we --

12             MR. HAEFELE:  Which I think is not --

13             THE COURT:  I'm not sure I understand that there is a

14   real difference.

15             MR. HAEFELE:  I don't think that there is.  But from

16   what I am hearing from Mr. Mohammedi, he's upset -- he seems to

17   be upset that we provided a table that indicated these are the

18   documents, and these are all of the responses that they respond

19   to, versus, this is the request and these are the documents

20   that respond to that request.

21             THE COURT:  But haven't you done that in Table B?

22             MR. HAEFELE:  I think that we have done -- in our

23   initial responses, I do believe that it's the request, and then

24   the Bates numbers of the documents that respond to that

25   request.  I think in our Table B, I believe -- well, the

C2fzterc                    Conference

1    Exhibit B doesn't cover every single one of the requests.  If

2    you look, I think if you --

3             THE COURT:  I see now it says examples.

4             MR. HAEFELE:  Right.  And we would be willing to do

5    that sort of table for each of the responses, if that would

6    work.

7             But to be clear with your Honor, when we responded to

8    Mr. Mohammedi's request or WAMY's request, we included a table

9    that had the document Bates number, and then next to that each

10   of the requests that that document responded to --

11            THE COURT:  Well, so then --

12            MR. HAEFELE:  The information --

13            THE COURT:  -- largely what you're offering to do is

14   some word processing.

15            MR. HAEFELE:  But if that satisfies the issue, which

16   is what I'm hearing the issue is.

17            MR. MOHAMMEDI:  Your Honor, I think the issue is not

18   this.  I really like to clarify.  I think there are two issues

19   here.

20            THE COURT:  Well, let me interrupt for a second.

21   Because I think there are two issues on both sides also, one of

22   which is what we've been talking about, the other of which is

23   that each side does not believe the other has produced proper

24   documents, which really goes to the merits of the dispute

25   rather than how documents are being produced.

C2fzterc                    Conference

```
 1              For example, in your letter, Mr. Mohammedi, or letters
 2     in the plural, you say, they've given me a lot of useless
 3     material by way of newspaper articles and such, when I'm asking
 4     for more government documents, just as an example.  And that
 5     really goes to what's being produced, rather than the way in
 6     which it's being produced or the way in which objections are
 7     being asserted.
 8              MR. HAEFELE:  Your Honor, on that --
 9              THE COURT:  Wait.  I didn't --
10              MR. MOHAMMEDI:  Judge, I think there are two issues
11     here.  I think way the issue is not the way it was produced.
12     The issue is that the boiler plate objections, those are, they
13     have not been updated, and we are at the end of the discovery.
14              THE COURT:  Well, we're not at the end of the
15     discovery, because I just extended it.
16              MR. MOHAMMEDI:  Yes, but --
17              THE COURT:  Let's take your request number, I think
18     it's 56, maybe it's 58, the one that asks, give us any
19     documents that show that WAMY was involved in publishing the
20     particular book.
21              MR. MOHAMMEDI:  Yes.
22              THE COURT:  Let me just find that.
23              "Produce all documents that refer, relate or
24     substantiate the allegation that WAMY ever published the book,
25     the Arab Volunteers in Afghanistan."  And in their Exhibit B,
```

C2fzterc                         Conference

1   plaintiffs list particular documents.

2            Your rejoinder is that they mischaracterized something

3   as part of the book; whereas, in reality it's in different

4   fonts and it's not part of the book.

5            Whether it's part of the book or a forgery or

6   whatever, that evidently is part of the documents that, rightly

7   or wrongly, cause the plaintiffs to think that WAMY was

8   involved in publishing that book.  So I'm not sure I understand

9   what the problem is, just taking that as a poster child, with

10  the response to request number 58.

11           MR. MOHAMMEDI:  Your Honor, the problem we have is

12  that in our reply where they said that they produced that book.

13           THE COURT:  Okay, but they're wrong.

14           MR. MOHAMMEDI:  And we just reply, said that was

15  not --

16           THE COURT:  In your view, they're wrong, it's not part

17  of the book.

18           But whether it's part of the book or something that

19  somebody gave them, you know, in the shape of a paper airplane,

20  it's what they think is responsive.  So, again, I'm not sure

21  what the problem is, other than that in their letter they say

22  it was part of the book, and you dispute that.

23           MR. MOHAMMEDI:  I was disputing the fact that they

24  spent a page or two discussing about the book.

25           THE COURT:  But I'm --

C2fzterc                    Conference

 1              MR. MOHAMMEDI:  Just replying to them, your Honor.

 2              THE COURT:  Okay.  Part of the problem is that both

 3      sides' submissions tend to grow the more we get off onto issues

 4      like whether either side is motivated by religious or ethnic

 5      animus, which it seems to me is a colossal waste of time.  It's

 6      well written, but I treat it sort of as punctuation because

 7      it's not relevant to the issues before me.

 8              So apart from the fact that they wax eloquent about

 9      this being part of the book, again with respect to request

10      number 58, I'm not sure what the problem is.

11              MR. MOHAMMEDI:  Your Honor, I'm just replying to the

12      plaintiffs' letter, response letter saying that they've

13      produced a book and said it was not a book.  That was --

14              THE COURT:  But they think it's the book.  Maybe

15      they're wrong.  Probably based on what you said, they are

16      wrong.  But they're dealing with translations, I gather, and

17      they've given you that which they believe supports their

18      assertion that WAMY published that book.  If they're wrong,

19      they're wrong.  But they've given you the document or documents

20      in the plural, that they think relate to that request, and

21      they've specifically identified them.

22              So where is the problem?

23              MR. MOHAMMEDI:  Again, your Honor, in reply to their

24      response saying that they produced the book and said they were

25      not a book --

C2fzterc                    Conference

```
 1              THE COURT:  We're going in circles.  You keep
 2     saying --
 3              MR. MOHAMMEDI:  Your Honor, there are many other
 4     documents and many issue that we have with plaintiff, and I
 5     think book is -- it's one of small --
 6              THE COURT:  Okay.
 7              MR. MOHAMMEDI:  -- thing.
 8              THE COURT:  We'll slough our way through those issues.
 9              One of your concerns was that they had boiler plate
10     objections.  One that I think is an exception to what I've said
11     several times about boiler plate objections, one that I think
12     gives a reasonable boiler plate objection is the document, we
13     object to these requests to the extent documents are
14     privileged.  At some point they're going to have to give you a
15     privilege log, but I don't know that anybody has yet exchanged
16     privilege logs as to anything.
17              Is that accurate?
18              MR. HAEFELE:  Your Honor, that is accurate, with the
19     qualification that we've had dialogue regarding privilege logs
20     sometime at a meet and confer where Mr. Mohammedi was one of
21     the gentleman that, one of the lawyers that was involved with
22     that meet and confer.  And I didn't change from gentleman to
23     lawyer to discount him as a gentleman.
24              But where that sits right now is we're waiting for a
25     proposal from the defendants as to what should be on -- what
```

C2fzterc                    Conference

1    their position is as to what should be on the privilege log.

2    So it's sort of the ball's in their court sort of thing.

3            THE COURT:  Okay.  But all I was saying was I think as

4    to that, I don't have a particular problem, Mr. Mohammedi, with

5    a boiler plate objection on either side, so long as, subject to

6    whatever ground rules both sides agree to, documents that need

7    to be in a privilege log are eventually logged on some schedule

8    we agree on.

9            MR. MOHAMMEDI:  Your Honor, the boiler plate --

10           THE COURT:  I mean --

11           MR. MOHAMMEDI:  -- objections are in every document

12   request that we produced.

13           The issue we have, we do not know which documents

14   they're objecting to, and if those documents they have them,

15   or -- because there are many objections in the same response;

16   sensitive information, document with consultant,

17   attorney-client privilege, issues relate to work product.  I

18   think WAMY has no guidance whatsoever how those documents are

19   being kept as, until all of them are produced.  And actually

20   that goes down to specifically to 58 request.  We are not

21   saying that what you produced to us is wrong.  What we're

22   saying to you is if that's what you have, just tell us.

23   There's not a single response saying that this is what we have.

24           THE COURT:  And that was what I was just about to ask

25   you about.  I mean, suppose -- I'm just picking a number at

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C2fzterc                    Conference

 1    random -- in response to your request 72, by the close of

 2    discovery they produced no documents, and there's a

 3    representation that discovery's closed and we've given you

 4    fact -- I'm sorry, document production's closed; we've given

 5    you everything we have on all of your requests.  And request

 6    number 72 says, give me everything that supports your

 7    contention that the following happened, and they've given you

 8    nothing.  At that point you have the comfort of knowing since,

 9    unless documents are after acquired, and there's a reasonable

10    explanation, you have the comfort of knowing that you're not

11    going to see any documents to support that contention.

12         So I guess if I were sitting in your chair, I'd be

13    somewhat pleased when I don't get documents, or I get documents

14    that the plaintiffs think are part of the book and you think

15    are part of some kind of screed by somebody that is not part of

16    the book.  So just tactically I confess, I'm not sure I

17    understand why you're concerned about all of this.

18         MR. MOHAMMEDI:  Your Honor, I am concerned because of

19    the objections that, for instance, you have an objection that

20    says, these documents are within the possession of the expert.

21         THE COURT:  Okay, let me --

22         MR. MOHAMMEDI:  And that is the problem, it's the

23    objections that are creating this not knowing exactly what they

24    would have.  It's not -- if they don't have anything, that's

25    fine.  I think the objections, without even giving ground and

C2fzterc                        Conference

1    not knowing exactly what they have, that is really what is our

2    concern that --

3            THE COURT:  Let me go through a few of the subjects in

4    Mr. Mohammedi's letter and then see where we are.

5            One of the objections was that we shouldn't have to

6    produce to WAMY its own internal documents -- which I get in

7    every case, I shouldn't have to give the other side a document

8    that they already have.  I don't buy that.  It seems to me if

9    you have documents that are responsive to requests, even if the

10   other side has them, they have to be produced.  You can

11   certainly call them up, if it's 50,000 pages, and say, you

12   already have this, do you really need this.  But I think, in

13   general, the objection that the other side already has

14   something, doesn't fly.

15           MR. HAEFELE:  Your Honor, if I could just respond to

16   that really really quickly.  One of the problems here is, if it

17   was a one off sort of thing, if it was a one event instance, I

18   think that's probably a very reasonable response to it; if you

19   want it, here.

20           But what we're facing is not only the reality, but

21   also the continuing notion that we continue to get requests

22   from not only WAMY, but other defendants that are purely busy

23   work for us.  They either have the documents or have access to

24   the documents.  And it takes a tremendous amount of resources

25   for us to figure out whether we have it, whether it's

C2fzterc                         Conference

1   translated and whether it applies to WAMY.  And that takes

2   time, it takes effort, it takes money to do these things.  And

3   if they're in their own files, especially when they're the ones

4   that are supposed to be producing to us -- and I understand

5   your Honor's admonition that, you know, just one side's not

6   abiding by their obligations doesn't excuse the other side --

7   but at some point there has to be an instance where there's

8   some rectification for the standoff on the other side.

9           THE COURT:  Well, but I can't imagine that you have a

10  lot of WAMY internal documents.  Am I missing something?

11          MR. HAEFELE:  Unfortunately not yet, you're right.  In

12  other words, I'd like to have a whole lot more of WAMY internal

13  documents, but especially WAMY Saudi Arabia, we got pretty

14  almost nil, if not anything.

15          THE COURT:  And I would imagine from WAMY

16  International it's not much better.

17          MR. HAEFELE:  I think that's probably -- I think

18  that's probably right.  But we still have to do the process of

19  making sure that that's true, which takes time.

20          THE COURT:  Well, but that's the nature of the

21  discovery.  I don't think you can carve out that area.  When we

22  get to public documents, I understand it somewhat more.

23          One of the documents that I gather you've requested,

24  Mr. Mohammedi, is the OFAC designation.

25          MR. MOHAMMEDI:  Yes, your Honor.

C2fzterc                          Conference

1          THE COURT:  And there either is or isn't such a

2     designation.  If there is, I assume that's something that WAMY,

3     of all entities, would certainly have a copy of.  I don't

4     understand why asking the plaintiffs for it moves the ball

5     forward, particularly because it's probably a document that

6     could be judicially noticed, in any event.

7          MR. MOHAMMEDI:  Your Honor, which we don't have.  We

8     know it does not exist.  But plaintiffs, they keep making this

9     claim that where there is a designated --

10          THE COURT:  Well --

11          MR. MOHAMMEDI:  -- over and over again.  Before, I

12     believe before Judge Casey, Mr. Kreindler, he made that comment

13     about few years ago, and specifically addressed.  He said to

14     him, can you just show me where WAMY was designated?  He said

15     yes, he was, except he's providing information on that because

16     we do not have anything like that.

17          THE COURT:  Well, they certainly provided to me in

18     their letter -- I know it's one of the things you object to --

19     a number of references where government officials have said

20     unkind things about WAMY.

21          MR. MOHAMMEDI:  That's not designation, your Honor.

22          THE COURT:  Understood.

23          So, I think there is a specific request that relates

24     to the OFAC designation, and, if so, what was the response on

25     behalf of the plaintiffs?

C2fzterc                        Conference

1           MR. HAEFELE:  Your Honor, number --

2           MR. MOHAMMEDI:  Document request 41, your Honor.

3           THE COURT:  Okay.  And what was the response?

4           MR. HAEFELE:  There are documents that had been

5    produced.  I don't know off the top of my head what they are,

6    but there are documents that have been produced.

7           THE COURT:  But --

8           MR. HAEFELE:  I would repeat, to my knowledge, WAMY

9    has not been designated by OFAC.

10           THE COURT:  Okay.  And I guess it would turn on the

11   way that request was worded.  But I'm not sure I buy the

12   concept that if something is part of a public record, and

13   plaintiffs have it, you don't have to produce it, Mr. Haefele.

14           Correlative to that, there's the work product

15   objection.  And I understand that if the plaintiffs have gone

16   through a sorting process, within reason that sorting process,

17   which reflects the mental processes of counsel, probably is

18   privileged under the case you cited to me, and under Sporck v.

19   Piel, a Third Circuit case.  I said privileged, but really

20   protected by work product.

21           But when you get to, for example, the 22,000 documents

22   that I gather you got from the SAR defendants, I don't

23   understand how the plaintiffs can say, well, since we selected

24   the documents that we obtain, that's somehow work product and

25   we don't have to produce those.  That may not be what you're

C2fzterc                         Conference

1    saying.  And one of the remarkable things about all of this is,

2    having read everybody's letters in some detail, I don't have a

3    clue whether the 22,000 documents are or are not among the

4    documents that were sent to Mr. Kabat on behalf of the

5    Defendants' Executive Committee.

6          MR. HAEFELE:  I can tell your Honor it's my

7    understanding that is not.  I think in response there was, in

8    the response from WAMY, there was conflation of the issue of

9    the 22,000 documents from the SAR defendants or the SAR related

10   defendants and the other defendants' documents.  I think those

11   two issues were conflated.  I would separate those out.  I do

12   not think that the 22,000 documents from the SAR related

13   defendants were sent to Mr. Kabat.  I think if you read our

14   letter brief, that's a separate paragraph.

15         THE COURT:  Okay.  But assuming that any defendant

16   produced the document to the plaintiffs, whether it was through

17   a selection process on the part of plaintiffs' counsel or not,

18   why isn't that a document that the defendants collectively are

19   entitled to?

20         MR. HAEFELE:  Your Honor, the way I see it is, first

21   off it's a burden issue, it's a burden issue, it's a cost

22   issue.  It's really an issue of -- it's kind of along the lines

23   of if I were to go to WAMY and say, we're the Burnett

24   plaintiffs, we want to know all the documents that you got that

25   support our claims that you got from the Ashton plaintiffs.  We

C2fzterc                        Conference

1    want to know all the documents that the federal plaintiffs

2    produced.  And that may be taking it a little too far, because

3    we would never do that.  But the fact of the matter is what

4    he's asking the plaintiffs to do is take on the burden of the

5    cost of reproducing documents, the costs of and the burden of

6    culling out the documents from the greater document set that

7    relates specifically to WAMY, which means now we got to go

8    through the documents and do his work and find those documents

9    that relate specifically to WAMY -- because that's what he's

10   asking for -- give us all the documents that were produced by

11   defendant X, Y, Z, that reference or that relate to WAMY.  Now

12   we got to go through and make an assessment for that particular

13   purpose, for his work.

14        THE COURT:  If the burden is equal on both sides, and

15   if it's a complete set of documents, and if WAMY's position is,

16   well, if you want documents from us you have to pay for them,

17   why can't you simply say, well, fine, there are 22,000

18   documents, you can come look at them and tell us which ones you

19   want, or you can tell us to copy them, and as soon as you pay

20   us for that, we'll ship them off to you?

21        MR. HAEFELE:  I'm not sure -- well, that hasn't been

22   the practice so far, frankly.  We've produced -- well, you know

23   generally what quantity that we've produced since you keep

24   hearing numbers quoted to you on the large volume.  We haven't

25   gotten a penny from any of the defendants on anything that

C2fzterc                        Conference

1    we've produced.

2              THE COURT:  But, you know, and you may have separate

3    arrangements with different parties.  It may be that the

4    accounting is more of a headache than just going ahead and

5    doing it.  But WAMY has drawn a line in the sand and said, if

6    you want page one -- maybe not because they've produced 1200

7    pages.  But as to the largest part of their potential

8    production, they're saying if you want it, either come to Saudi

9    Arabia and tag it and then we'll copy it at your expense, or

10   we'll ship a wall of file cabinets to New York at your expense,

11   which would you prefer.

12             MR. HAEFELE:  Well, your Honor --

13             THE COURT:  So I don't understand why your response

14   can't be, fine, there's 22,000 pages of SAR documents, come

15   look at them or tell us you want a complete set and we'll

16   produce that to you.

17             MR. HAEFELE:  Again, I'm trying not to conflate the

18   SAR issue, which, as I see it, a separate issue, which, you

19   know -- I think the plaintiffs' perspective on the SAR

20   documents, just to get this out of the way, I think is that we

21   don't really have a dog in that fight.  If they're the SAR

22   entities documents, we have agreed, in order to get them

23   produced, we won't show them to other people.  If your Honor

24   makes that order, you know, obviously we're going to respect

25   your Honor's order.  But we also think that perhaps the SAR

C2fzterc                    Conference

 1    defendants attorneys should weigh in on that, and I don't know

 2    that they have.

 3            THE COURT:  Well --

 4            MR. HAEFELE:  I do know that they received a

 5    transcript from the last hearing where it was raised.

 6            THE COURT:  Well, unless the SAR defendants obtain a

 7    protective order from me, I'm going to direct that, subject to

 8    the conditions I just described, those documents be produced to

 9    any defendant who requests them.  And I'll stay that order for

10    ten days so that if the SAR defendants, through

11    Ms. Lukey(phonetic) or whoever co-counsel was, wish to file

12    some objections or a motion for protective order, they can.

13            MR. HAEFELE:  All right.  I understand that, your

14    Honor.

15            That being out of the way, the SAR related defendants

16    documents, when it comes to the other entities there may be I

17    guess likewise issues.  Just, for example, I know there were

18    some documents that were Saudi Bin Laden group documents that

19    were covered by a separate protective order that Saudi Bin

20    Laden group required us to enter before they would produce.

21    And pursuant to that protective order, they designated certain

22    of the documents as highly confidential, as opposed to just

23    confidential, which made it much more restricted.  I think your

24    Honor, I think maybe addressed an issue that was in the --

25    before the Court that required sealing of the Court's

C2fzterc                    Conference

1   transcript as a result of certain of those documents being

2   designated as highly confidential.

3            My point, your Honor, is that if you wholesale require

4   those sorts of productions to come from the plaintiffs, we then

5   become injected into a battle, potential battles related to the

6   documents that we don't really take a position in, but we don't

7   want to break any either protective order or agreement or some

8   kind of covenant that was related to those documents, when the

9   real answer is, the defendants can get those documents from the

10  other defendants who initially produced them, and we're not

11  involved, we're not injected in the middle.

12           THE COURT:  But Saudi Bin Laden group is or is not a

13  defendant at this point?

14           MR. HAEFELE:  They're -- well, they -- I guess I got

15  to be careful.  They will likely be on appeal, I would imagine,

16  but they have been -- there is an order that has dismissed

17  them.

18           THE COURT:  And so for the moment, they are not a

19  defendant.

20           MR. HAEFELE:  For the moment they are a former

21  defendant in the District Court who has been dismissed by the

22  District Court, who will be presumably before the Second

23  Circuit.

24           THE COURT:  There's no stay of that order.  So as we

25  speak, they are not a defendant.

C2fzterc                    Conference

1          So Mr. Mohammedi, if he wants their documents, has to

2     subpoena them, rather than requesting them from you.

3          As to those sorts of repositories of documents, or

4     groups of documents.  As I sit here today, I don't know what

5     the confidentiality agreement provided, whether highly

6     confidential meant plaintiffs' attorneys eyes only or meant all

7     attorneys' eyes.  If it's the latter, then Mr. Mohammedi, if it

8     works like most confidentiality agreements, would have to sign

9     the agreement that he will treat them as highly confidential,

10    and he would get them.

11         If there's no procedure set up, then I think the

12    answer would be what you have to do is provide notice to the

13    Bin Laden group's counsel that there's been a request for these

14    documents, that I've directed that they be turned over, unless

15    Saudi Bin Laden group or anybody else in that circumstance

16    files a motion for a protective order and I grant it.

17         MR. HAEFELE:  Your Honor, can we --

18         THE COURT:  And then you don't have to parse those

19    documents.  You can simply say, Mr. Mohammedi, come over next

20    Thursday, look through them and tell me what you want.

21         MR. HAEFELE:  That is what I was about to ask your

22    Honor.  Just to be clear, in making those available to Mr.

23    Mohammedi or whatever other defendant may ask for them, we

24    wouldn't be obligated to parse through them and determine

25    categories that he's asking us to parse out; in other words,

C2fzterc                    Conference

1    give us all the defendants' documents that have been produced

2    to you from various defendants that relate to such and such

3    allegation, that relate to WAMY or that relate, you know, we

4    just make them wholesale available to them to look through for

5    their purposes.

6         THE COURT:  I think I've said it before, maybe this

7    clarifies my view of this.  But where the burden is equal for

8    you or the plaintiffs; there's a room filled with file

9    cabinets, and you would have to go through 100,000 documents to

10   find 20 pieces of paper that specifically refer to WAMY or,

11   worse yet, have to go through and analyze which ones

12   potentially relate to WAMY, even though they don't specifically

13   refer to WAMY, I think it's perfectly reasonable for you to

14   say, come look at the documents and tell us what you want.  I

15   don't think that you have to go through piles of documents,

16   isolate those which are potentially responsive to a request,

17   provided you're willing to let the other side wade through

18   them.

19        MR. HAEFELE:  Your Honor, I just want to clarify one

20   thing that I heard you say, and I may have misheard you.  When

21   you're saying that it's just as burdensome on either side, you

22   would say that, you know, each side would bear its own burden I

23   think is what you generally said.

24        But, for example, when we're asking for documents that

25   are WAMY's documents from WAMY, the rules require one of two

C2fzterc                    Conference

  1  things; either they tell us what's responsive from their

  2  warehouse of documents, or if there's a particular way that

  3  they're kept in the ordinary course of business, I think

  4  warehouse is not part of that.  If you ordinarily keep it in a

  5  warehouse, which is why I'm a little dubious about having to go

  6  and hunt through an entire warehouse for documents responsive

  7  to our requests.  But that I think that's maybe --

  8          THE COURT:  Well, I think by, somewhat by definition,

  9  if I have files downstairs of my decisions since I went on the

 10  bench, and you asked me for all decisions that relate to

 11  attorney-client privilege, and I keep them in looseleaf

 12  binders, those are kept by me in the ordinary course of

 13  business chronologically, and I think I would be entitled to

 14  say to you, go fish, and you can start with volume one and work

 15  your way forward.

 16          If I give those looseleaf binders to the court, which

 17  combines them with the files of every other judge so that

 18  they're all in one central repository for purposes of

 19  responding to a document request, they're no longer kept in the

 20  ordinary course of business.  If I take my looseleaf binders,

 21  and because my chambers is small, I send them to a warehouse, I

 22  don't think the fact that they're in a warehouse changes the

 23  fact that they're kept in the ordinary course of business.

 24          But if what has occurred at WAMY is that documents

 25  from all over the place have been put together in some

C2fzterc                    Conference

 1    warehouse, I tend to agree with you that those are no longer

 2    kept in the ordinary course of business.

 3          MR. HAEFELE:  And that's consistent with my view as

 4    well, your Honor.

 5          And I did want to touch on one quick misconception I

 6    think that was raised earlier, when there was reference to some

 7    kind of an index of the documents that WAMY has provided to us.

 8    What it was were the three-page index that provided almost no

 9    information, including -- doesn't even tell us how many pages

10    each of the documents are.  So for us to be able to delineate

11    from that which of the documents in Saudi Arabia we would like

12    for them to produce, it's impossible from a three-page index

13    that provides, basically, a maybe one line description of what

14    the category of documents is, a date of the document.  And then

15    it does say which response -- which request it's responsive to.

16    But there is no number, there's no Bates number as Mr.

17    Mohammedi indicated and, like I said, it's --

18          THE COURT:  Hand up the index.

19          (Handing)

20          THE COURT:  When there are numbers under responsive to

21    document requests, Mr. Mohammedi, are these boxes or what?  I

22    take it they're not discreet, obviously, documents.

23          MR. MOHAMMEDI:  There are quite a lot of documents for

24    each one of them, your Honor.

25          THE COURT:  Well, I mean the largest one is -- oh, I'm

C2fzterc                    Conference

1    sorry.  I see.  This is -- that's the column of document

2    requests.  Okay.  This is the index of documents that were

3    produced.  This is the 1200 documents?

4              MR. HAEFELE:  Your Honor, that's indicating that it's

5    WAMY Saudi Arabia, which has produced zero.  So my

6    understanding is that that is their index of what they're

7    prepared -- even though it says that those documents, it

8    indicates the address as being Mr. Mohammedi's office here in

9    New York, you know, we're being told the documents will be made

10   available to us in Saudi Arabia.  But if those are the --

11             THE COURT:  This looks like astonishingly few pieces

12   of paper.

13             MR. HAEFELE:  I don't disagree with you, your Honor.

14             THE COURT:  I mean, for example -- wait, let me just

15   pick one thing from the list.  There's a letter from Dr. Johani

16   to Adbur Rahman Musa, which is apparently dated April 30th,

17   1995 and is responsive to two of the plaintiffs' requests.

18             Are you saying, Mr. Mohammedi, that this is in your

19   office or that the plaintiffs have to go to Saudi Arabia to get

20   this?

21             MR. MOHAMMEDI:  I don't even know which one you're

22   referring to, your Honor.  I can't even see the document.

23             THE COURT:  Well, it's your To the plaintiffs'

24   Executive Committee dated June 20th, 2011.

25             MR. MOHAMMEDI:  Is this the Saudi -- there are two

C2fzterc                    Conference

1    types.  There are WAMY International, which are the documents

2    are located in my office.  Everything else is located in Saudi

3    Arabia.

4          THE COURT:  Well, this says "Index of WAMY Saudi

5    Arabia documents."  And then it says, "located at law firm of

6    Omar T. Mohammedi," and your address.

7          MR. MOHAMMEDI:  Maybe some of them -- some of the

8    documents from Saudi Arabia are actually that we produced, they

9    were in our offices.

10          THE COURT:  Okay, but this is a --

11          MR. MOHAMMEDI:  There is another index, your Honor.

12    Some of them I think was part of WAMY International, some of

13    the documents related to WAMY Saudi Arabia we produced to them

14    that were located in our offices.

15          The ones that are located -- because we have documents

16    here, documents that are mixed between WAMY International and

17    WAMY Saudi Arabia.  Most of them are WAMY International.

18          THE COURT:  The cover letter seems to say, "As a

19    courtesy, we brought some of WAMY's Saudi Arabia documents to

20    our New York office."

21          MR. MOHAMMEDI:  Those are --

22          THE COURT:  I gather that's what this index is.

23          But, Mr. Mohammedi, do you have the index that you

24    provided of what's in Saudi Arabia?

25          MR. MOHAMMEDI:  Do you have them here?  I mean, we

C2fzterc                    Conference

 1    didn't expect this motion to be, you know, against WAMY, but --

 2            THE COURT:  Let me hand this back to you, Mr. Haefele.

 3            MR. MOHAMMEDI:  I don't think we brought this one here

 4    because we were not --yes, the one from Saudi Arabia, your

 5    Honor, were produced November 16, I believe.  That's when we

 6    produced another index, not this index.  It was different

 7    index, I believe, that was related to -- that was in

 8    November 16th.  That's when we produced the index.

 9            THE COURT:  Well, I'm trying to follow up on what you

10    said, Mr. Haefele.

11            The same way that you have burden arguments, I can't

12    easily tell WAMY to produce 6,000 folders, and what's been

13    estimated as -- I'm not sure I have a realistic estimate as to

14    how many documents that is here, and I'm not sure you really

15    want all that without knowing what's in there.  But I also

16    don't think it's reasonable to tell you come wade through some

17    warehouse.

18            MR. HAEFELE:  Your Honor, and I think if what we're

19    facing is similar to what we faced with Muslim -- where they're

20    basically producing their warehouse of documents, irregardless

21    of whether or not a response to discovery requests, obviously,

22    we're not inclined to do that either; same way we weren't

23    inclined there, we're not inclined to do that.

24            THE COURT:  But Mr. Mohammedi says 36 people spent

25    collectively a million and a half dollars worth of time

C2fzterc                    Conference

 1    isolating the documents.  So it sounds like something was done

 2    that's a little more methodical than what Mr. McMahon's client

 3    has.

 4         MR. HAEFELE:  One would hope, but we haven't seen any

 5    of that, your Honor.  We keep getting promises and promises

 6    about moving the ball forward in terms of getting an indication

 7    of what there is, and we just, we just haven't seen it.  We

 8    don't know what it is, because it hasn't been indicated to us,

 9    and nothing's been indicated to show us that the work that it

10    claims is being done is in fact being done.  And, you know, I

11    don't have a reason to believe it or disbelieve it, your Honor.

12    I don't know.

13         MR. GOETZ:  Your Honor, I've seen it.  It's a nice

14    room.  It's not a dusty warehouse.  It's maybe about half this

15    size of this courtroom, with movable files.  There is a lot of

16    documents in there.  There is a team of people working hard.

17    This is in the top floor of WAMY's office building in Saudi

18    Arabia.

19         I think we have a logistical issue we have to work out

20    in terms of whether or not plaintiffs go over there, whether or

21    not we produce these, scan them, the cost issue.  And I think

22    we're getting a sense of where the Court's coming from on that.

23         So I would encourage the Court to allow us to revisit

24    that and see what mechanics we can work out.  The documents are

25    there.  There are a number of them, they're organized, and that

C2fzterc                        Conference

1    teams's been working very hard on that.  But it's not just a --

2    we're not just sending them into the abyss, your Honor, I can

3    assure you of that.

4            MR. HAEFELE:  It's not -- it's pretty much a

5    nonstarter for us to be required to go into one of the hot

6    spots of, frankly, half of our team wouldn't even be permitted

7    to step foot in.  And the fact that -- I mean, one of our

8    process server goes over there and doesn't come back, is sort

9    of indicative of the concerns we might have, your Honor.

10           THE COURT:  Wait, say that again.

11           MR. HAEFELE:  I don't know if your Honor is aware, but

12   one of the reasons, at least, why service by publication was

13   permitted in this case is because one of the process servers

14   that went over to Saudi Arabia to serve notice of this, of

15   these proceedings was found dead on a road.  He never made it

16   home.

17           THE COURT:  I was not aware of that.

18           MR. HAEFELE:  And so we would not necessarily be

19   inclined to send the lawyers who have been at the forefront of

20   this litigation, who have stepped foot in the courtroom and

21   made, you know, statements on the record to go over to Saudi

22   Arabia likewise.

23           THE COURT:  But even if you went over, these are

24   documents, I presume, in Arabic.  So it would be Greek to you,

25   I assume.

C2fzterc                    Conference

1              MR. HAEFELE:  I agree with that as well, your Honor.

2       I think that -- I mean -- and I'm willing to work with Mr.

3       Goetz.  I am willing to work with Mr. Mohammedi.  We all are.

4       Time is of the essence.  We've been fiddling with this with

5       them for years to get their documents and we have zero

6       documents from one of the two defendants.

7              MR. MOHAMMEDI:  Your Honor, we made this available to

8       them.  We just did not say did they're not available.  We asked

9       them, here are the documents.  You have two options.  They

10      refused to entertain any one of them, simple.  So we have them.

11      It's not like we do not have them.  We said they're available.

12      We went -- my co-counsel and I went for ten days there and we

13      went through those documents.  We reviewed them.  We reviewed

14      most of them.  And we said -- we came back and we had a

15      conference call with them on October 18th.  And we mentioned,

16      we promise when we come back to you, we going to mention to you

17      that you have this and you have the index.  And that's exactly

18      what we did.  Plaintiff have not been responsive as far as how

19      they want these documents to be produced to them.  We gave them

20      two options, and they said just two options are not acceptable

21      to us.

22             MR. HAEFELE:  Your Honor, I mean I think that I've

23      assessed for your Honor at least one of the two options.  And

24      if the other option is reproduction of the entire group of

25      documents, that's pretty much a nonstarter too if we don't know

C2fzterc                    Conference

 1    what the entire group of documents are.  If they give us

 2    something that is a little bit more substantive in terms of

 3    what the documents are, more so than the --

 4         THE COURT:  Well, correct me if I'm wrong, do you now

 5    have the documents on the letter you just showed me?

 6         MR. HAEFELE:  I would have to look, your Honor.  I

 7    don't know that we do.

 8         THE COURT:  Well --

 9         MR. HAEFELE:  And the reason I say that is because

10    what my understanding is we don't have any documents produced

11    by WAMY Saudi Arabia.  So if I'm --

12         THE COURT:  Okay, that may well be.  But Mr. Mohammedi

13    sent you a letter saying these documents are sitting in my

14    office.  It's not an extensive list of documents.  It doesn't

15    even seem like it could be a prohibitive reproduction cost.  I

16    would have thought that as to those, you'd say fine.

17         MR. HAEFELE:  Your Honor, I don't know what the volume

18    of this is, and I don't disagree with the what your Honor's

19    saying and we'll follow up on that, but I guess --

20         THE COURT:  How large -- wait, let me interrupt and

21    ask Mr. Mohammedi, the documents on that list that are in your

22    office, bigger than a bread box?  Give me some indication.

23         MR. MOHAMMEDI:  It's maybe a box, a box, about a box.

24         MR. HAEFELE:  I guess this is what makes me scratch my

25    head.  They did this for WAMY International, and we sent copy

C2fzterc                    Conference

1    service up and said just copy it.  I guess if I was aware that

2    these were there likewise, I probably would have done the same

3    thing.

4              THE COURT:  It says they're there.

5              MR. HAEFELE:  But I don't know when the production was

6    made for the other WAMY, why they weren't -- I mean, we were

7    obviously asking for all the documents that they had in their

8    office at the time.  I guess I just didn't know that these

9    documents were not copied as well.

10             MR. MOHAMMEDI:  Can you -- I think there is

11   misunderstanding, if I can just --

12             MR. HAEFELE:  There may be a disconnect here.

13             MR. MOHAMMEDI:  Just to make sure.

14             THE COURT:  It sounds like that's one of the themes of

15   this case.

16             MR. KREINDLER:  We have a failure to communicate.

17             MR. HAEFELE:  And we all speak English.

18             THE COURT:  You do.  Don't count me in that group.

19             (Pause)

20             MR. MOHAMMEDI:  I believe those documents are still in

21   our offices, your Honor.

22             THE COURT:  And the quantity is a box?

23             MR. MOHAMMEDI:  It's about a box, maybe.

24             MR. HAEFELE:  We'll resolve that hopefully this week,

25   your Honor.

C2fzterc                    Conference

1           THE COURT:  Okay.  As to the remaining documents that

2      are --

3           MR. MOHAMMEDI:  Your Honor, if you don't mind.  I'm

4      going to send those to plaintiffs without having to -- how's

5      that?  I'll send it to you.  I'll -- we will scan them for you.

6      We'll send them to you.

7           MR. HAEFELE:  All right.  I mean, I don't want to talk

8      necessarily directly, but I do want to know whether or not they

9      have been Bates stamped, and I'm --

10          THE COURT:  Well, any documents that are produced in

11     the case on either side should be Bates stamped.

12          MR. MOHAMMEDI:  We will do that, your Honor.

13          THE COURT:  Unless they're electronic files that

14     somebody has demanded in native format, which, by definition,

15     can't be Bates stamped, but I think a large part of what we're

16     talking about here precedes a lot of electronic record keeping.

17          As to the other 6,000 files, I don't know that I can

18     make any rulings, because I don't have a clue how specific or

19     nonspecific the index is.  It may be that there are files that

20     cry out for you to have copied if you give them some indication

21     of the size of them.  It may be that the index is

22     unintelligible and that that's not workable.

23          I take it the index does not correlate the files to

24     particular requests, or does it?

25          MR. MOHAMMEDI:  It does, your Honor.

1         THE COURT:  It does?

2         MR. MOHAMMEDI:  Yes.

3         THE COURT:  Well, until the two sides have a more

4    focused discussion about that with respect to the WAMY

5    documents, I'm not going to address it further.

6         I understand what you said about the process server,

7    but it may be that at some stage somebody has to look at the

8    documents.  I don't know whether -- well, I guess I can safely

9    assume the plaintiffs are not working with counsel in Saudi

10   Arabia.

11        MR. HAEFELE:  I think --

12        THE COURT:  At least in a public way?

13        MR. KREINDLER:  Correct.

14        MR. HAEFELE:  I think that is correct, your Honor.

15        THE COURT:  So we may have to deal with that the next

16   time we meet, but I encourage the two sides to talk.

17        MR. HAEFELE:  And just, your Honor, on that, I suspect

18   that counsel in Saudi Arabia would be disinclined to work with

19   us.

20        THE COURT:  Yeah.  No --

21        MR. HAEFELE:  Yeah.

22        THE COURT:  -- I wasn't suggesting you send out an RFP

23   to see whether there are any Saudi firms that wish to align

24   themselves with the plaintiffs in this case.

25        You've said that you're trying to work out

1    collectively some protocol for privilege logs, so I don't know

2    that we can go further with that.

3        I said that a boiler plate privilege objection, for

4    the moment, seems to me is the only thing either side can do.

5        As to work product, I think I've indicated that to the

6    extent there is a claim that the set of SAR documents was

7    culled down from a larger set and, therefore, constitutes work

8    product -- if the plaintiffs' contention is or was that we

9    don't have to produce that because the set is work product, I

10   don't buy that.

11       I've been pontificating a lot.  I'm not sure that I've

12   really moved the ball forward, although I've tried to provide

13   some ground rules.

14       There was also a question about the third party

15   sources of funding where I have to tell you, Mr. Mohammedi, I'm

16   not sure I understood what your point was, except to the extent

17   any witnesses perhaps were paid by third parties who had some

18   axe to grind.  But absent that, as luck would have it, last

19   night I spent about 45 minutes listening to somebody who was

20   the CEO of a litigation funding firm -- not for personal injury

21   actions.  They fund major corporate litigations, where

22   corporations, for one reason or another, and sometimes it's

23   just for bookkeeping reasons, want to go out to a third-party

24   lender to assume the costs of their counsel who are working by

25   the hour.  And assuming that plaintiffs had, I don't know

C2fzterc                        Conference

1   whether it's true or not, some such organization behind them,

2   I'm not sure what difference it makes.

3           MR. GOETZ:  Your Honor, I can address it.  It may or

4   may not make a difference, and that's what I guess we're trying

5   to find out.  If it's just a commercial enterprise, I agree it

6   would not make a difference.

7           THE COURT:  Well, suppose it's the Israeli government,

8   what difference does it make then?

9           MR. GOETZ:  If that government has a connection with

10  any potential witness, then that would be obviously, or

11  arguably the witness then would have perhaps more an interest

12  in the case, and that they're aligned with a party that would

13  have a financial stake.

14          THE COURT:  Well, but at the moment I think it's a

15  fishing expedition.  If any witness testifies that they're

16  receiving a monthly stipend, for example, from some third-party

17  funding source, I will agree with you, and I will direct that

18  there be discovery as to that.

19          But if, for example, Kreindler & Kreindler or Mr.

20  Haefele's firm is being paid buckets of money by some religious

21  or political group to move the case forward, I don't see any

22  relevance to that.  Other than potentially for a press release

23  in terms of issues that are really in the case, I don't think

24  it matters.

25          MR. GOETZ:  I appreciate the Court's comments.  I

C2fzterc                    Conference

 1    think we've stated our position and we'll inquire of the

 2    witnesses.

 3             THE COURT:  Okay.

 4             MR. HAEFELE:  Your Honor, one more point on that.

 5    First off, thank you, and I say this somewhat in jest.  We will

 6    take request for proposals for that.

 7             Now, but seriously what comes around goes around.  I'm

 8    assuming, your Honor, and that likewise the witnesses that

 9    might testify on defendants' side would be open to similar

10    questions as to their potential bias, I'm sure.

11             THE COURT:  Well, bias of a witness is always

12    relevant.  So what a witnesses earns, who they're paid by on

13    both sides is fair game.

14             It seems to me we're getting a little ahead of

15    ourselves here.

16             I know I've responded in somewhat disorganized fashion

17    to the letters -- I apologize for that -- but are there other

18    issues raised by your letter, Mr. Mohammedi, that I ought to

19    take up today?

20             MR. MOHAMMEDI:  I think there was one issue that I

21    alluded to is the one where plaintiff, they objected -- they

22    objected on the basis that the documents may be in the

23    possession of the expert, who is not going to testify.

24             THE COURT:  Oh.

25             MR. MOHAMMEDI:  There is -- we do believe there is a

C2fzterc                    Conference

1    difference between documents, we think the position of the

2    expert on the document generated by that expert.

3            THE COURT:  Well --

4            MR. MOHAMMEDI:  If document was provided by plaintiffs

5    to those, I expect to review them.  We are entitled to them.

6            THE COURT:  Well, as to a document generated by the

7    expert, that clearly is work product.

8            MR. MOHAMMEDI:  Right.

9            THE COURT:  And I think we're all agreed as to that.

10           As to a preexisting document, which may not be from an

11   expert, but is from one of these consultants, I guess then that

12   presents a more interesting question.

13           MR. HAEFELE:  Your Honor, I'd stand here and make

14   arguments because I think there are actually arguments that it

15   is work product, but we're not withholding any of that.  So I'm

16   just not sure -- I think it's a non-issue.  I think we've made

17   that clear that the substantive underlying documents that our

18   consultants have made available to us, to the extent they are

19   responsive to the requests, we have been producing them.

20           THE COURT:  Okay.  So I guess it's a non-issue.

21           And I think I said, at the April conference, to the

22   extent that there are security concerns for witnesses or

23   consultants or whomever, if potentially there is a document

24   that's responsive, but that plaintiffs believe needs to be

25   withheld or redacted, there has to be a motion for a protective

C2fzterc                          Conference

1    order.

2              MR. HAEFELE:  And I understand that, your Honor.

3              Just to be clear, the bulk or the substance of our

4    objection with regard to the consultants was really directed at

5    what's generated by the consultant either for us or among us,

6    and that the manner in which we used that to move forward in

7    the litigation.

8              THE COURT:  I'm sorry, say that again?

9              MR. HAEFELE:  The substance of our objection really

10   for the consulting individuals was really geared towards what

11   your Honor focused on, which is that which was created as a

12   result of the work of the expert or the interaction between the

13   expert and the lawyers.

14             THE COURT:  Okay.  Bear with me one second.

15             In connection with this case, I've received a letter

16   that's from Mr. Mellon of Mellon, Webster and Shelly that says

17   "The plaintiffs have filed their damages inquest memorandum."

18   It says, "As we discussed" -- I'm not sure when that was -- "we

19   wish to file one exhibit under seal, specifically Exhibit H,

20   which is a DVD containing personal and financial and economic

21   data for each of the named plaintiffs," paraphrasing, "which

22   was used by the expert to prepare his report."

23             Are there any objections to that?

24             MR. HAEFELE:  I don't think --

25             MR. GOLDMAN:  No, your Honor.  We discussed this over

C2fzterc                          Conference

1    the telephone.  We have no objection.

2              MR. HAEFELE:  This was the subject of your Honor's

3    conversation with counsel from Mr. Mellon's firm on

4    January 30th.  We had a telephone conference call where he

5    indicated that he was going to make a request to file some of

6    the documents under seal, and I think that's what this is being

7    specific to.

8              THE COURT:  Yes, okay.  And the other defendants don't

9    have a dog in this fight, so I just signed the letter.

10             Anything else from anyone?

11             Two questions.  When is our next conference; is there

12   one scheduled?

13             MR. KABAT:  15th?

14             MR. KREINDLER:  March 15th, I think.

15             THE COURT:  As long as there's one scheduled around

16   then.

17             MR. KREINDLER:  Yeah.

18             THE COURT:  And when is the next conference with Judge

19   Daniels?

20             MR. GOLDMAN:  March 15th, your Honor.

21             THE COURT:  Okay.  I look forward to seeing you all on

22   March 15th.

23             (Adjourned to March 15th, 2012)

24

25