UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 :

:          **MEMORANDUM OF LAW**
          **IN SUPPORT OF MOTION**
:          **FOR ENTRY OF DEFAULT**
          **JUDGMENT BY THE COURT**
:
          1:03 MDL 1570 (GBD) (FM)
:

------------------------------------------------------------------x

This Document Relates to
Hoglan v. Islamic Republic of Iran,
1:11 Civ. 7550 (GBD) (FM)

    The *Hoglan* Plaintiffs, through counsel, hereby respectfully submit this Memorandum of

Law in Support of the Motion for Entry of Default Judgment by the Court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. This Action is Related to *Havlish, et al. v. bin Laden, et al.*

    The instant lawsuit is the second of two actions arising out of the terrorist attacks of

September 11, 2001, that brings claims against the Islamic Republic of Iran, its political

subdivisions, agencies and instrumentalities under the Foreign Sovereign Immunities Act of

1976 ("FSIA"), 28 U.S.C. §§ 1330; 1602-1611, and, specifically, under the FSIA's state sponsor

of terrorism exception codified at 28 U.S.C. §1605A.  In the first lawsuit, *Havlish, et al. v. bin

Laden, et al.*, 1:03-cv-09848 (GBD) (FM), this Court entered an Order of Judgment and Findings

of Fact and Conclusions of Law holding that the sixteen (16) Defendants related to the Islamic

Republic of Iran (the "Iranian Defendants") [1] were liable to the *Havlish* Plaintiffs for damages

---

[1] The Iranian Defendants in this action, which were also defendants in *Havlish* are: (1) Islamic Republic of Iran;
(2) Ayatollah Ali Hoseini Khamenei, Supreme Leader of Iran; (3) Ali Akbar Hashemi Rafsanjani, Chairman,
Expediency Discernment Counsel and former President of Iran; (4) Iran's Ministry of Information and Security; (5)
the Islamic Revolutionary Guard Corps; (6) Iran's Ministry of Petroleum; (7) National Iranian Tanker Corporation;

resulting from the Iranian Defendants' provision of direct and material aid and support to al Qaeda in carrying out the attacks of September 11, 2001.  See *Havlish, et al. v. bin Laden, et al.*, Findings of Fact and Conclusions of Law, Document 294, and Order of Judgment, Document 295, both attached to the accompanying Motion for Entry of Default Judgment by the Court (the "Default Judgment Motion") as **Exhibits M** and **N**, respectively.  After damages proceedings, this Court entered Final Judgment in *Havlish* on October 12, 2012.  Document 317.

*Hoglan, et al. v. Islamic Republic of Iran, et al.* is an action related to the *Havlish* lawsuit.  *Hoglan* was timely filed and, like *Havlish*, arises out of the terrorist attacks of September 11, 2001. The Iranian Defendants in both the *Havlish* and *Hoglan* lawsuits are identical.  The facts of *Hoglan* are identical to the facts and evidence in *Havlish*.

Unlike a traditional civil action between two private parties, §1608(e) of the FSIA establishes a condition precedent that "evidence satisfactory to the court" be presented prior to the entry of a default judgment against a foreign sovereign.  Evidence firmly establishing the culpability of the Iranian Defendants with respect to the terrorist attacks of September 11, 2001, was gathered during a ten-year investigation by counsel for the *Havlish* Plaintiffs.  This evidence was received, considered, and held to be satisfactory pursuant to 28 U.S.C. §1608(e) by this Honorable Court in *Havlish, et al. v. bin Laden, et al*.  The *Hoglan* Plaintiffs now move this Honorable Court to take judicial notice of the evidence admitted in *Havlish* and to admit such evidence in *Hoglan*, and further move for an order establishing the liability of these Iranian Defendants, relying upon the same evidence to satisfy the evidentiary requirements of the FSIA's §1608(e).  Further, the *Hoglan* Plaintiffs move this Court to adopt substantially the same

---

(8) National Iranian Oil Corporation; (9) National Iranian Gas Company; (10) National Iranian Petrochemical Company; (11) Iran Airlines; (12) Iran's Ministry of Economic Affairs and Finance; (13) Iran's Ministry of Commerce; (14) Iran's Ministry of Defense and Armed Forces Logistics; (15) the Central Bank of the Islamic Republic of Iran; and (16) Hezbollah.

Findings of Fact and Conclusions of Law entered in *Havlish* pertaining to the liability of each

and every of the Iranian Defendants in *Hoglan*.  (The only differences in the proposed Findings

of Fact and Conclusions of Law in *Hoglan* from those entered in *Havlish* pertain to the

procedural history of *Hoglan*, most importantly, service of process, and to judicial notice of the

evidence.)  Thereupon, the *Hoglan* Plaintiffs request that this Court enter an Order of Liability

and enter Default Judgment in favor of all the Plaintiffs and against all sixteen (16) Iranian

Defendants in *Hoglan*.

**B.  <u>Procedural History of *Hoglan*</u>**

The *Hoglan* Plaintiffs instituted this action by way of an original Complaint filed on

September 9, 2011, in the United States District Court for the District of Columbia.  Plaintiffs

filed an Amended Complaint in the same court on September 13, 2011, which added seven (7)

Defendants to the action.  The *Hoglan* action was transferred to this Court via a Conditional

Transfer Order issued on October 17, 2011, by the United States Judicial Panel on Multidistrict

Litigation, and the case was made a part of *In Re: Terrorist Attacks on September 11, 2001*, 03

MDL 1570 (GBD) (FM).  A copy of this Conditional Transfer Order is attached to the

accompanying Default Judgment Motion as **Exhibit A**.

On July 2, 2013, the *Hoglan* Plaintiffs were granted leave to file a Second Amended

Complaint.  The Second Amended Complaint removed from the action the seven (7) defendants

that had been added in the Amended Complaint, referenced above, added the Estate of Osama

bin Laden and al Qaeda as Defendants, added certain Plaintiffs who wished to participate in the

pending litigation, and modified the averments to conform with the evidence that was gathered

and presented to the Court and entered into evidence in the *Havlish* action with regard to the

Iranian Defendants.  By the terms of the Order entered by the Honorable Frank Maas, U.S.

Magistrate Judge, the filing of the Second Amended Complaint related back to the filing of the original Complaint filed by the *Hoglan* Plaintiffs on September 9, 2011.[2]  A copy of the Order entered by Magistrate Judge Maas is attached to the accompanying Default Judgment Motion as **Exhibit B**.  A copy of the Second Amended Complaint (Document 62), which lists all of the parties seeking entry of default judgment by this Honorable Court via the instant Motion, is attached to the accompanying Default Judgment Motion as **Exhibit C**.

The *Hoglan* Plaintiffs perfected service of the Second Amended Complaint on the sixteen (16) Iranian Defendants in accordance with the FSIA, and Plaintiffs' endeavors to do so are fully detailed below.  The Iranian Defendants have been afforded more than a year and a quarter to respond to the Second Amended Complaint and have failed to do so.  Thus, this matter is ripe for an entry of a default judgment by this Court in favor of the *Hoglan* Plaintiffs and against the Iranian Defendants.  Pursuant to Local Civil Rule 55.1, Plaintiffs applied for, and obtained, a Certificate of Default with respect to the Iranian Defendants from the Clerk of Court on March 17, 2015, more than a year after formal service of process was completed, as detailed below.

C.     **Service of the *Hoglan* Lawsuit upon the Iranian Defendants**

The Second Amended Complaint (Document 62) is the governing pleading stating the claims of the *Hoglan* Plaintiffs against the sixteen (16) Iranian Defendants.  Section 1608 of the FSIA prescribes four methods of service of process on a foreign state or a political subdivision of a foreign state, and three methods of service of process upon an agency and instrumentality of a foreign state.  28 U.S.C. §1608(a)(1)-(4); 28 U.S.C. §1608(b)(1)-(3).  These methods of service are listed in the FSIA in descending order of preference.

The first two methods of service of original process on a foreign state, or a political

---

[2] This Order also amended Paragraph 26 of the Second Amended Complaint to include an Estate as a Plaintiff that had been inadvertently omitted from the Second Amended Complaint.

subdivision of a foreign state, are "in accordance of a special arrangement for service between the plaintiff and the foreign state" or, if no special arrangement exists, by delivery of original process "in accordance with an applicable international convention on service of judicial documents."  28 U.S.C. §1608(a)(1)-(2); 28 U.S.C. §1608(b)(1)-(2).  No "special arrangement" for service of the Second Amended Complaint exists between the *Hoglan* Plaintiffs and the Islamic Republic of Iran.  Indeed, Iran has failed to appear to defend itself in any liability proceeding brought under the state sponsor of terrorism exception to sovereign immunity since such claims became actionable in 1996.  With regard to §1608(a)(2), Iran is not a signatory to any "applicable international convention on service of judicial documents."[3]

If original service of process cannot be made by the first two methods authorized by statute, the FSIA permits a plaintiff to request that the Clerk of Court send the requisite documents to perfect service "by any form of mail requiring a signed receipt … to the head of the ministry of foreign affairs of the foreign state concerned" or, in the case of an agency or instrumentality, directly to the agency or instrumentality itself.  28 U.S.C. §§1608(a)(3), (b)(3)(B).  On October 18, 2012, the *Hoglan* Plaintiffs obtained a license from the United States Treasury Department's Office of Foreign Assets Control ("OFAC") to ship packages, through the international courier DHL Express,[4] to Iran. The *Hoglan* Plaintiffs subsequently hand-delivered sixteen (16) sets of legal documents, one for each of the sixteen (16) Iranian Defendants, to the Clerk of Court for the Southern District of New York for shipment to Tehran, Iran, via DHL Express pursuant to 28 U.S.C. §1608(a)(3) and §1608(b)(3)(B).  Plaintiffs' hand

---

[3] See Website of Hague Conference for Private International Law, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Members of the Organisation at http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last accessed July 10, 2015).  See also United States District Court for the Southern District of New York, Foreign Mailing Instructions, pp. 5-6.

[4] OFAC is the arm of the United States Treasury that is responsible for promulgating and enforcing the Iranian Transaction Regulations that have been implemented pursuant to Executive Order by the past six presidential administrations.

delivery included translations of each document into Farsi and the completed shipping waybills, which directed each package of legal documents to the Ministry of Foreign Affairs of the Islamic Republic of Iran, the address of which was verified through the English version of the Foreign Ministry's own website, http://www.mfa.gov.ir/Default.aspx?lang=en.

The Clerk of Court processed the sixteen (16) DHL Express packages and tendered them to DHL Express, on the *Hoglan* Plaintiffs' behalf, for shipment to Iran on July 30, 2013. Copies of the Certificates of Mailing from the Clerk of Court are attached to the accompanying Default Judgment Motion as **Exhibit D**. According to the tracking summaries provided by DHL Express, the packages arrived in Tehran on or about August 4, 2013, and the shipment was refused by the Ministry of Foreign Affairs on that same date.[5] DHL Express contacted counsel for the *Hoglan* Plaintiffs to advise that the shipments had been refused, and to request authorization to dispose of the packages, or return the shipments to Mellon & Webster, P.C. in Doylestown, PA. The shipments were returned on or about August 27, 2013. Copies of the sixteen (16) tracking summaries forwarded to the Clerk of Court as Returns of Service are attached to the accompanying Default Judgment Motion as **Exhibit E**.[6]

Following the Iranian Defendants' refusal to accept service of the Second Amended Complaint via DHL Express, the *Hoglan* Plaintiffs requested that the Clerk of Court attempt service via the final method of service prescribed by the FSIA, which involves transmission of

---

[5] Although 28 U.S.C. §1608(b)(3)(B) permits direct service upon an agency or instrumentality of Iran by any form of mail requiring a signed receipt, the *Hoglan* Plaintiffs chose to serve all sixteen (16) Iranian Defendants through the Ministry of Foreign Affairs because the *Hoglan* Plaintiffs believed that service of the Second Amended Complaint directly through the Ministry of Foreign Affairs would best ensure that each Defendant received notice of the Second Amended Complaint should the shipments not be refused.

[6] The numbers for the DHL Express waybills and the waybill numbers on the Certificates of Mailing do not match. This was because DHL Express held the shipment after receiving it from the Clerk of Court because requisite indemnity letters were not included. These indemnity letters, *inter alia*, indemnify DHL Express for any sanctions violations that may result in connection with the shipment. The halting of the shipment for inclusion of indemnity letters required the use of new waybills with new waybill numbers. A representative indemnity letter is attached to the accompanying Default Judgment Motion as **Exhibit F**.

the necessary documents by the Clerk of Court to the Department of State in Washington, D.C.

for service via diplomatic channels.  See 28 U.S.C. §1608(a)(4).  Plaintiffs again hand delivered

to the Clerk of Court the requisite documents for service upon the eight (8) Iranian Defendants in

the *Hoglan* action that are the foreign state or a political subdivision of the foreign state, along

with a cashier's check in the amount of $2,275 for each such Defendant to be served.  The Clerk

of Court dispatched the documents on Plaintiffs' behalf to Washington, D.C. on October 8 and

October 9, 2013.  Copies of the Certificates of Mailing from the Clerk of Court to the

Department of State for the eight (8) Defendants that represent the foreign state or a political

subdivision of a foreign state is attached to the accompanying Default Judgment Motion as

**Exhibit G**.[7]

In the meantime, the *Hoglan* Plaintiffs filed a Motion for Issuance of Letters Rogatory

(Document 63) in this Court so that the remaining eight (8) Iranian Defendants who are

considered agencies and instrumentalities of the Islamic Republic of Iran could be served via

diplomatic means.  The Department of State requires that letters rogatory be issued as a condition

precedent for service upon these persons and entities in accordance with §1608(b)(3)(A).  This

Court granted the *Hoglan* Plaintiffs' Motion via an Order (Document 66) entered by the

Honorable Frank Maas on November 27, 2013.  A copy of this Order is attached to the

accompanying Default Judgment Motion as **Exhibit H**.  Plaintiffs subsequently hand delivered

to the Clerk of Court the letters rogatory and requisite documents for service upon the eight (8)

Iranian Defendants in the *Hoglan* action that are agencies and instrumentalities of the Islamic

Republic of Iran, along with a cashier's check in the amount of $2,275 for each such Defendant

to be served.  The Clerk of Court dispatched the documents, on Plaintiffs' behalf, to the United

---

[7]  The cover letters from the Clerk misidentify originating office as the "Law Firm of Maxwell S. Pfeifer."  It was actually Mellon & Webster, P.C.  All the other information else is correct.

States Department of State in Washington, D.C. on December 13, 2013.  Copies of the

Certificates of Mailing from the Clerk of Court to the Department of State for the eight (8)

agency and instrumentality Defendants is attached to the accompanying Default Judgment

Motion as **Exhibit I**.

Because the United States and Iran have no diplomatic relations, diplomatic notes are

sent to Iran through the U.S. Embassy in Bern, Switzerland, which transmits the notes to the

Swiss Confederation.  The Swiss authorities then forward any such diplomatic transmissions to

their Foreign Interests Section at the Swiss Embassy in Tehran.  On February 16, 2014, the

Foreign Interests Section of the Embassy of Switzerland in Iran served the Ministry of Foreign

Affairs of the Islamic Republic of Iran with the Second Amended Complaint, and other materials

required by law to perfect service, for the eight (8) Iranian Defendants that are the Islamic

Republic of Iran or a political subdivision thereof.  The Ministry of Foreign Affairs refused

service of these materials on that same date.  A copy of the letter by William P. Fritzlen, Esquire,

of the U.S. Department of State to Ruby J. Krajick, Clerk of Court, Southern District of New

York, dated March 27, 2014, is attached to the accompanying Default Judgment Motion as

**Exhibit J**.[8]

Similarly, on or about February 16, 2014, the Foreign Interests Section of the Embassy of

Switzerland in Iran served the Ministry of Foreign Affairs of the Islamic Republic of Iran with

---

[8] This March 27, 2014, letter from the Department of State regarding service on Iran, and seven (7) political subdivisions of Iran, was incorrectly docketed by the Clerk on 4/1/2014 as Return of Letters Rogatory.  Letters rogatory are only required by the State Department for service upon agencies and instrumentalities, not a foreign state or political subdivision of a foreign state.  There is a second docket entry for Return of Letters Rogatory on 4/8/2014, but it again references the return of diplomatic notes directed toward Iran and its political subdivisions, which do not require the use of letters rogatory.  The *Hoglan* Plaintiffs noticed the inconsistencies in this docket entries during the preparation of this Motion and sent the Department of State an inquiry to confirm that all sixteen (16) of the Iranian Defendants, eight (8) of which are a foreign state or political subdivision of a foreign state and eight (8) of which are an agency or instrumentality of Iran requiring letters rogatory for service, were indeed served with the Second Amended Complaint and other materials required to perfect service.  The State Department confirmed that service was perfected upon all sixteen (16) Iranian Defendants during February 2014.  See **Exhibit K**, as attached to the accompanying Default Judgment Motion.

the Second Amended Complaint, and other materials required by law to perfect service, for the

eight (8) Iranian Defendants that are an agency and instrumentality of the Islamic Republic.  The

Ministry of Foreign Affairs refused service of these materials on that same date.  A copy of the

letter by William P. Fritzlen of U.S. Department of State to James. P. McCoy, Esq. dated

February 3, 2015, is attached to the accompanying Default Judgment Motion as **Exhibit K**.

Following the receipt of this letter, the *Hoglan* Plaintiffs filed an Application with the

Clerk of Court pursuant to SDNY Local Civil Rule 55.2(b) for the issuance of a Certificate of

Default with respect to the Iranian Defendants.  A Certificate of Default was issued by the Clerk

of Court on March 17, 2015, and is attached to the accompanying Default Judgment Motion as

**Exhibit L**.

All of the Iranian Defendants have failed to enter an appearance in this Court, and none

have filed any responsive pleading to the Second Amended Complaint as required by §1608(d)

of the FSIA.  See 28 U.S.C. §1608(d).  Now that the Clerk of Court has issued a Certificate of

Default with respect to all of the Iranian Defendants, the *Hoglan* Plaintiffs move the Court to

take judicial notice of the evidence admitted in the Havlish case and further move for formal

entry of a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) and §1608(e) of the FSIA, which

requires that "evidence satisfactory to the court" be presented prior to entry of a default judgment

against a foreign sovereign.

## II.  LEGAL ARGUMENT

### A. The *Hoglan* Plaintiffs Have Perfected Service of the Second Amended Complaint in Accordance with the FSIA

Section 1608(c) of the FSIA provides that:

(c)  Service shall be deemed to have been made –
(1)  in the case of service [by diplomatic means], as of the date of transmittal indicated in the certified copy of the diplomatic note; and

> (2) in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.

28 U.S.C. §1608(c)(1)-(2).

According to the correspondence tendered by the Department of State in this matter and docketed by the Clerk of Court, the *Hoglan* Plaintiffs perfected service upon the eight (8) Iranian Defendants that are the foreign state or a political subdivision of the foreign state on February 16, 2014. Service upon the eight (8) Iranian Defendants who are agencies and instrumentalities of the foreign state was also perfected during February 2014. The rejection of the service materials by the Ministry of Foreign Affairs in Tehran, and/or the failure of the Iranian authorities to execute requests for international judicial assistance via the letters rogatory issued by this Court, have no bearing whatsoever on whether or not service is perfected. The FSIA explicitly states that service is deemed to have been made as of the date of transmittal of the diplomatic notes.

**B. The Iranian Defendants Have Failed to Enter an Appearance or File a Responsive Pleading as Required by the FSIA**

Section 1608(d) of the FSIA provides that:

> (d) In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency and instrumentality of a foreign state shall serve an answer or other responsive pleading to a complaint within sixty days after service has been made under this section.

28 U.S.C. §1608(d).

The Iranian Defendants have been afforded more than a year and a quarter to enter their appearance and file a responsive pleading as required by §1608(d) in this matter, and all have failed to do so. Indeed, Iran has *never* appeared to defend itself during the liability phase of any action premised on the state sponsor of terrorism exception to foreign sovereign immunity in this

Court or any other court.  See *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 85 (D.D.C. 2009) (Lamberth, C.J.) (observing "the notion" that Iran might appear to defend an action brought under the state sponsor of terrorism exception to sovereign immunity "is almost laughable because that nation has never appeared in any of the terrorism actions that have been litigated against it in this Court.").  See also *Heiser v. Islamic Republic of Iran*, 00-cv-2329 (D.D.C. Aug. 10, 2011) (Lamberth, C.J.) (denying a motion by private U.S. telecommunications company to interplead Iran in an execution proceeding against funds owed by telecommunications company to Iran, holding that "this action has been proceeding for almost a decade, yet in all this time Iran has not appeared to account for its role in the horrific bombing of the Khobar Towers residential complex.  This choice was made despite both exposure to more than $500 million in damages and evidence that Iran is perfectly capable of appearing when it wishes.").

With service of the Second Amended Complaint perfected and the Iranian Defendants lacking any intention whatsoever to appear to defend themselves in this action, and the *Hoglan* Plaintiffs having obtained a Certificate of Default from the Clerk of Court, this matter is now ripe for entry of a default judgment in favor of the *Hoglan* Plaintiffs and against the Iranian Defendants.

### C. Federal Rule of Civil Procedure 55(b)(2) Requires <u>an Entry of Default Judgment by the Court</u>

Federal Rule of Civil Procedure 55(b) reads, in relevant part, as follows:

(b) ENTERING A DEFAULT JUDGMENT.

(1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

Rule 55(b)(1)-(2), Fed. R. Civ. P.  See also SDNY Local Rule 55.2(b).

In this action, as in *Havlish*, a default judgment against the Iranian Defendants for failure to respond to the Second Amended Complaint is properly entered by the Court.

**D. This Court May Take Judicial Notice of the Findings of Fact and Conclusions of Law Entered in *Havlish, et al. v. bin Laden, et al.* with Respect to the Liability of the 16 Iranian Defendants in the *Hoglan* Action**

"Under the FSIA, a court cannot simply enter default judgment, but must, out of respect for the principle of sovereign immunity, ensure that plaintiffs 'establish [their] claim or right to relief by evidence that is satisfactory to the court.'"  *Taylor v. Islamic Republic of Iran*, 811 F.Supp.2d 1 (D.D.C. 2011); 28 U.S.C. §1608(e).   However, "the FSIA does not require this Court to re-litigate issues that have already been settled in previous decisions."  *Murphy v. Islamic Republic of Iran*, 740 F.Supp.2d 51 (D.D.C. 2010) *quoting Brewer v. Islamic Republic of Iran*, 664 F.Supp.2d 43, 54 (D.D.C. 2009).  "Indeed, as has been noted in several other FSIA cases brought in [the United States Court for the District of Columbia], 'this Court may take judicial notice of related proceedings and records in cases before the same court.'"  *Murphy*, 740 F.Supp.2d 51 at 58 *quoting Brewer*, 664 F.Supp.2d 43, 50-51.  A court may review evidence via

a judicially noticed opinion or other case records "without necessitating the re-presentment of

such evidence." *Murphy*, 740 F.Supp.2d  at 58, *citing Heiser v. Islamic Republic of Iran*, 466

F.Supp.2d 229, 264 (D.D.C. 2006).  A court is only required to make Findings of Fact and

Conclusions of Law anew.  *Murphy*, 740 F.Supp.2d 51 at 58.

It is not uncommon for multiple lawsuits to arise from a single terrorist attack.  For

example, at least three actions were brought against Iran as a result of the 1984 suicide bombing

of the U.S. Embassy Annex building in East Beirut, Lebanon: *Wagner v. Islamic Republic of*

*Iran*, 172 F.Supp.2d 128 (D.D.C. 2001); *Welch v. Islamic Republic of Iran*, No. 01-863 (D.D.C.

2007); and *Brewer v. Islamic Republic of Iran*, 664 F.Supp.2d 43 (D.D.C. 2009).  In *Brewer*, the

last of the three cases to proceed to judgment, the court held that the *Brewer* Plaintiffs properly

relied on the testimony establishing the liability of Iran and Hezbollah for the bombing from

*Wagner* and *Welch*:

> In the present case, plaintiffs have cited the testimony from *Wagner* and *Welch* at
> length, recognizing that the FSIA does not require this Court to re-litigate issues
> that have already been settled. Instead, this Court "may take judicial notice of
> related proceedings and records in cases before the same court." <u>See</u> *Estate of*
> *Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229, 263 (D.D.C. 2006).
> Defendants' connections to Hezbollah have been explored at length in this
> jurisdiction…[t]he *Wagner* and *Welch* opinions not only illustrate the general
> connection between Hezbollah and Iran, but also justify a specific finding that
> defendants provided support for the 1984 attack on the U.S. Embassy Annex in
> Lebanon. Relying on the pleadings and the above findings of other judges in this
> jurisdiction, this Court concludes that defendants provided "material support and
> resources" to Hezbollah in carrying out the September 20, 1984 attack on the
> Embassy Annex in East Beirut.

*Brewer v. Islamic Republic of Iran*, 664 F.Supp.2d 43, at 54.

Because the *Havlish* and *Hoglan* lawsuits are actions arising out of the same terrorist

attack and in which the Iranian Defendants are identical, and all such Defendants having failed to

appear or respond despite being properly served in accordance with the FSIA, this matter is ripe

for entry of default judgment against the Iranian Defendants and a judgment of liability in favor of the *Hoglan* Plaintiffs.  Accordingly, the *Hoglan* Plaintiffs move this Honorable Court, upon the same grounds and evidence already evinced in *Havlish*, for entry of Findings of Fact and Conclusions of Law consistent therewith, and for an order and judgment of liability in favor of the *Hoglan* Plaintiffs against all sixteen (16) of the Iranian Defendants.

Upon entry of such orders by this Court, the *Hoglan* Plaintiffs request that, as in *Havlish*, this action be referred to the Honorable Frank Maas, U.S. Magistrate Judge, to receive evidence of damages, within thirty (30) days,  as to all of the *Hoglan* Plaintiffs and to make, forthwith, a Report and Recommendation on damages to the Court.

### III.    CONCLUSION

In light of the above, the *Hoglan* Plaintiffs respectfully request that the attached proposed Findings of Fact and Conclusions of Law be entered in this case, and that an Order of Judgment be entered decreeing that the Iranian Defendants have been properly served with the Second Amended Complaint and are in default for failing to respond as required by 28 U.S.C. §1608(d), and, further, that the Plaintiffs have established their claim or right to relief by evidence that is satisfactory to the court pursuant to 28 U.S.C. §1608(e).

Respectfully submitted,

Date:   July 10, 2015

/s/ Timothy B. Fleming
Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB PLLC
1850 M Street, NW, Suite 720
Washington, DC  20036
(202) 467-4489

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
Melina Goldfarb (AL Bar No. ASB- 3739-R71M)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB LLC

14

The Kress Building
301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105
Indianapolis, IN  46260
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL  60134
(630) 232-7450

*Attorneys for the Hoglan Plaintiffs*