UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 03-md-1570 (GBD)(SN) |
| ESTATE OF ALICE HOGLAN, BY ITS PERSONAL REPRESENTATIVE CANDYCE S. HOGLAN, ET AL.,<br><br>Plaintiffs-Judgment Creditors,<br><br>v.<br><br>OAKTREE CAPITAL MANAGEMENT, LP; FLEETSCAPE CAPITAL HOLDINGS LIMITED; AND FLEETSCAPE SUEZ RAJAN LLC,<br><br>Garnishees. | Case No. 11-cv-7550 (GBD)(SN) |

**MEMORANDUM OF LAW OF RESPONDENTS OAKTREE CAPITAL MANAGEMENT, LP, FLEETSCAPE CAPITAL HOLDINGS LIMITED, AND FLEETSCAPE SUEZ RAJAN LLC IN SUPPORT OF THEIR MOTION TO QUASH THE HOGLAN CREDITORS' DEPOSITION SUBPOENA**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTS AND PROCEDURAL HISTORY ............................................................................... 2

ARGUMENT .................................................................................................................................. 5

I.  THE DEPOSITION SUBPOENA DOES NOT COMPLY WITH THE
    TERRITORIAL LIMITS OF RULE 45 ........................................................................... 5

II. THE DEPOSITION SUBPOENA IMPOSES AN UNDUE BURDEN ON THE
    RESPONDENTS ............................................................................................................... 7

III. THE DEPOSITION SUBPOENA IS NOT VALID BECAUSE THIS COURT
     LACKS PERSONAL JURISDICTION OVER THE RESPONDENTS ........................ 9

CONCLUSION ............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

Page(s)

### **Federal and State Cases**

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)..................................................................................................10

*Deutsche Bank AG v. Sebastian Holdings Inc.*,
   No. 161079/2013, 2017 N.Y. Misc. LEXIS 441 (N.Y. Sup. Ct. Feb. 3, 2017).........................8

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002)....................................................................................................6

*EM Ltd. v. Republic of Argentina*,
   695 F.3d 201 (2d Cir. 2012)................................................................................................7, 8

*Estate of Ungar v. The Palestinian Auth.*,
   No. 105521/2005, 2009 N.Y. Misc. LEXIS 4490 (N.Y. Sup. Ct. Dec. 17,
   2009) .......................................................................................................................................8

*Estate of Ungar v. Palestinian Auth.*,
   400 F. Supp. 2d 541 (S.D.N.Y. 2005) .......................................................................5, 7, 9, 10

*GMA Accessories v. Elec. Wonderland, Inc.*,
   No. 07-cv-3219, 2012 U.S. Dist. LEXIS 72897 (S.D.N.Y. May 22, 2012) .............................8

*Hermitage Global Partners L.P. v. Prevezon Holdings Ltd.*,
   No. 14-mc-00318, 2015 U.S. Dist. LEXIS 20080 (S.D.N.Y. Feb. 19, 2015) ..........................6

*Jazini by Jazini v. Nissan Motor Co.*,
   148 F.3d 181, 186 (2d Cir. 1998) .......................................................................................9, 10

*In re an Order Quashing v. FIRST AMERICAN CORP.*,
   182 F.R.D. 56 (S.D.N.Y. 1998) ..............................................................................................6

*In re Vivendi Universal, S.A., Sec. Litig.*,
   No. 02 Civ. 5571, 2004 U.S. Dist. LEXIS 26077 (S.D.N.Y. Dec. 29, 2004)...........................7

*Laker Airways, Ltd. v. Pan American World Airways*,
   607 F. Supp. 324 (S.D.N.Y. 1985) .........................................................................................7

*Ornrat Keawsri v. Ramen-Ya Inc.*,
   No. 17-cv-2406, 2022 U.S. Dist. LEXIS 81993 (S.D.N.Y. May 5, 2022) ...............................5

*Phoenix Bulk Carriers (BVI) Ltd. v. Triorient, LLC*,
   No. 20-cv-0936, 2021 U.S. Dist. LEXIS 29582 (S.D.N.Y. Feb. 17, 2021).........................7, 8

*Townsend Farms, Inc. v. Göknur*,
 No. 20-MC-75, 2020 U.S. Dist. LEXIS 232288 (S.D.N.Y. Dec. 9, 2020).................................9

*Vera v. Republic of Cuba*,
 867 F.3d 310 (2d Cir. 2017).......................................................................................................9

*Wagner v. Chiari & Ilecki*, LLP,
 973 F.3d 154 (2d Cir. 2020).......................................................................................................8

## Statutes and Rules

CPLR § 5223..................................................................................................................................8

CPLR § 302(a)(1) .........................................................................................................................10

Fed. R. Civ. P. 45 ................................................................................................................. *passim*

Fed. R. Civ. P. 69 ................................................................................................................. *passim*

Respondents Oaktree Capital Management, L.P. ("OCM"), Fleetscape Capital Holdings Limited ("Fleetscape Holdings"), and Fleetscape Suez Rajan, LLC ("FSR" and collectively, "Respondents"), respectfully move pursuant to Rule 45(d)(3)(A) to quash a deposition subpoena served by the plaintiff-judgment creditors in this action (the "Hoglan Creditors").

## PRELIMINARY STATEMENT

On March 3, 2022 the Hoglan Creditors moved in this action seeking an order from this Court to direct Respondents to turn over certain oil cargo aboard the vessel *Suez Rajan* (IMO No. 9524475) (the "Vessel"), alleging that "Oaktree" collectively owns or has some level of control over the Vessel or its cargo, and asserting without support that Respondents are subject to the jurisdiction of this Court. The motion was fully briefed by April 25, 2022. Although Respondents have no quarrel with the Hoglan Creditors, Respondents are not in possession, custody, or control of the property of any judgment debtor herein, and for that reason deposition discovery is unwarranted here.

Since the turnover motion was briefed, Respondents have continued to voluntarily engage with the Hoglan Creditors' requests for additional information to the extent those requests had a reasonable basis (i.e., insofar as Respondents could assist the Hoglan Creditors in identifying information about the oil cargo and the third parties that are not affiliated with Oaktree in possession and custody of that property). However, after engaging in meet-and-confer sessions with the Hoglan Creditors and providing additional written discovery in good faith, the Hoglan Creditors' latest request—to compel an OCM employee who lives and works in London for testimony at a deposition noticed to proceed in New York on 12 days' notice—is a bridge too far. Because the subpoena does not comply with the requirements of Rule 45, and because the discovery that the Hoglan Creditors seek is effectively moot in light of Respondents' undisputed

1

lack of possession, custody, or control of the property of any judgment debtor, Respondents respectfully request that the Hoglan Creditors' deposition subpoena be quashed.

## FACTS AND PROCEDURAL HISTORY

These proceedings arose following the release of public reports indicating that there is Iranian-origin oil aboard the Vessel received from a ship-to-ship transfer on February 13, 2022 with a vessel called the M/V VIRGO. In a February 15, 2022 letter from United Against Nuclear Iran ("UANI") sent to OCM, UANI stated that "[p]rior to the STS [i.e., ship-to-ship transfer], we suspect VIRGO loaded Iranian oil on January 22 at Kharg Island, Iran." Dkt. 372-1.[1] News reports subsequently reported on UANI's suspicions. *See id.* Dkt. 372-6 (Reuters, Feb. 18, 2022); Dkt. 372-17 (Associated Press, Feb. 17, 2022). In the wake of the public reports, the U.S. government also commenced an investigation into the origin of the oil aboard the Vessel. OCM is cooperating with that investigation and understands that the government's investigation remains ongoing.

*The Turnover Motion*

On March 3, 2022, the Hoglan Creditors filed their Motion for Turnover of Assets and supporting papers (the "Turnover Motion") seeking an order compelling the Respondents to turnover the oil or the proceeds from its sale. Dkts. 370-372. On March 28, 2022, Respondents opposed the motion, explaining among other things that: (i) Respondents are not in possession, custody, or control of the property of any judgment debtor; and (ii) the Hoglan Creditors failed to make a *prima facie* showing that Respondents have sufficient forum-related contacts related to

---

[1] "Dkt" references are to docket entries in *Hoglan et al v. Islamic Republic of Iran*, 11-cv-7550 (S.D.N.Y.).

the oil cargo aboard the Vessel to warrant an exercise of personal jurisdiction by this Court. Dkts. 378-380.[2]

On April 25, 2022, the Hoglan Creditors submitted their reply memorandum, which included a request for jurisdictional discovery. Dkt. 385. But the Hoglan Creditors have not submitted any evidence showing that any Respondent has possession or custody of that cargo, or any control over the Vessel or its movements. Nor have the Hoglan Creditors submitted any evidence to show that any of the judgment debtors have an attachable interest in the oil cargo aboard the Vessel, or who currently has title to the oil cargo aboard the Vessel. What is more, in response to two rounds of written discovery, Respondents have confirmed that they lack knowledge of (i) any property aboard the Vessel in which any of the judgment debtors may have an interest; (ii) who currently has title to the oil aboard the Vessel; and (iii) whether the oil currently aboard the Vessel originated in Iran. It remains the case that, to the best of Respondents' knowledge, the Vessel is presently located in international waters near Singapore, and that the cargo that is the subject of the turnover motion is not located in the United States.[3]

*Discovery Requests*

On March 11, 2022, the Hoglan Creditors served the Respondents with document and information subpoenas seeking information related to the extent of the Respondents' control over

---

[2] Together with their response to the Turnover Motion, Respondents submitted two declarations from personnel affiliated with OCM – Martin Graham and Tobias Backer – confirming the lack of any sufficient forum-related contacts by any Respondent with respect to this matter and explaining, in detail, Respondents' lack of possession, custody or control over the oil cargo sought by the Hoglan Creditors. *See* Dkts. 379, 380. As detailed in Respondents' opposition to the Turnover Motion, the Hoglan Creditors' follow-up discovery efforts are also futile insofar as they have not alleged or evidenced that any judgment debtor has an interest in the oil in question and cannot execute against property located outside of the United States under the FSIA and TRIA. *See* Dkt. 378.

[3] The position of the Vessel is readily ascertainable on a variety of public websites that track vessel positions. *See, e.g.*, https://www.marinetraffic.com/en/ais/details/ships/shipid:713518/mmsi:538090590/imo:9524475/vessel:SUEZ_RAJAN.

3

the Vessel (the "First Discovery Requests"). The Respondents served their Responses and Objections to the Hoglan Creditors' document and information subpoenas (the "Discovery Responses") on March 28, 2022 and produced a copy of the Bareboat Agreement, reflecting that none of the Respondents have possession, custody, or control of the cargo aboard the Vessel, and accordingly cannot turn over or cause such cargo to be turned over to the Hoglan Creditors. *See also* Dkt. 378 at 3-5 (detailing the history of the Vessel, the sale-leaseback financing involving the vessel, and the Bareboat Agreement and its terms).

Following service of the Discovery Responses, the Hoglan Creditors did not contact Respondents until late May 2022 when the parties agreed to a meet-and-confer regarding discovery. On June 2, 2022, the parties had an extensive and productive conversation relating to the Respondents' Discovery Responses during which the Hoglan Creditors offered proposals to narrow the scope of certain document requests, clarify the scope of certain information requests, and seek the Respondents' position regarding the possibility of updating certain Discovery Responses given the lapse of time since the initial responses. *See* Ex. 2 (Letter from L. Wolosky dated June 3, 2022. During the meet-and-confer the Hoglan Creditors also sought the Respondents' position on the possibility of making Mr. Graham available for a deposition relating to jurisdictional issues. *Id.*

On June 15, 2022, the Respondents provided the Hoglan Creditors with their responses to the various discovery proposals including: (i) agreeing to produce documents related to documents and communications concerning the Vessel received from Empire Navigation Inc. ("Empire")— the party exercising the operation and management of the Vessel; (ii) providing updated responses to the requested Discovery Responses; and (iii) declining to make Mr. Graham available for a deposition because Respondents saw "no need to engage in deposition discovery concerning the

4

jurisdictional issues raised in the turnover motion while additional dispositive issues remain pending before the Court" and especially because "there is no genuine dispute that Respondents do not possess or have custody of the vessel or its cargo." *See* Ex. 3 (Letter from B. Maloney dated June 15, 2022). Subsequently, on June 21, 2022, the Respondents provided the Hoglan Creditors with a further production.

On June 23, 2022, following the Respondents' document production and updated discovery responses, the Hoglan Creditors served additional discovery requests seeking information relating to the Respondents' jurisdictional contacts in New York, and a subpoena to testify at a deposition, seeking to compel the Respondents to produce OCM employee Martin Graham, who lives and works in London, on twelve days' notice for July 5, 2022 (the "Deposition Subpoena"). The Deposition Subpoena is attached as Exhibit 1 to the accompanying Maloney Declaration.[4]

## ARGUMENT

### I. THE DEPOSITION SUBPOENA DOES NOT COMPLY WITH THE TERRITORIAL LIMITS OF RULE 45

The Hoglan Creditors' Deposition Subpoena must be quashed because it is noticed to proceed at the offices of Jenner & Block in New York and accordingly is beyond the territorial scope of Rule 45. Fed. R. Civ. P. 45(c); *Ornrat Keawsri v. Ramen-Ya Inc.*, No. 17-cv-2406, 2022 U.S. Dist. LEXIS 81993, at *7 (S.D.N.Y. May 5, 2022) (quashing subpoena for failure to comply with geographical requirements of Rule 45(c)). Subpoenas served pursuant to Rule 69 must comport with the requirements of Rule 45. *Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 548 (S.D.N.Y. 2005) ("the Federal Rules of Civil Procedure 'govern' the enforcement of judgments under Rule 69"). Under Rule 45, a subpoena requiring a non-party to attend a deposition

---

[4] References to Exhibits herein are to the accompanying Declaration of Brian P. Maloney dated July 1, 2022.

5

must be quashed if the non-party is required to travel greater than one-hundred miles from where they reside, are employed, or regularly transact business in person. Fed. R. Civ. P. 45(d)(3)(A)(ii). The purpose of the geographical limit is to "to protect [non-party] witnesses from being subjected to excessive discovery burdens in litigation in which they have little or no interest." *Hermitage Global Partners L.P. v. Prevezon Holdings Ltd.*, No. 14-mc-00318, 2015 U.S. Dist. LEXIS 20080, at *11 (S.D.N.Y. Feb. 19, 2015) (quoting *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002)); *In re an Order Quashing v. FIRST AMERICAN CORP.*, 182 F.R.D. 56, 62 (S.D.N.Y. 1998) ("Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify . . . that the rule focuses on the individual is supported by the fact that there is no such limitation regarding production by a nonparty of documents").

Here, the Deposition Subpoena does not purport to be issued under Rule 30(b)(6), and is confusingly addressed to all three Respondents, but specifically seeks to compel Respondents to produce a particular employee – Mr. Graham – from London. Further, the Deposition Subpoena lists the place of deposition as Jenner & Block's New York office. The Deposition Subpoena suggests that the deposition could be conducted via remote means pursuant to Rule 30(b)(4), but that rule provides for a remote deposition only where the parties stipulate or if the court, on motion, orders a remote deposition to proceed. And the parties have neither conferred nor stipulated to a remote deposition or discussed an appropriate schedule or location where such deposition would proceed.[5] As such, because Mr. Graham works with Fleetscape in the United Kingdom, not New

---

[5] OCM is also responding to near-identical requests for discovery from another group of judgment creditors of Iran or its instrumentalities (the "Anderson Creditors"), as a non-party in the action styled *Emma Jean Anderson, et al., v. Islamic Republic of Iran and National Iranian Oil Corporation* (C.D. Cal. Case No. 02-cv-2160). The Anderson Creditors are also seeking a deposition or in-court examination of a representative of OCM. Notably, that court vacated a hearing that sought permission to conduct an examination of an Oaktree representative and instead requested supplemental briefing arising from its jurisdictional concerns, including that "there is no asset located within the Central District and there is no evidence that the [Vessel] or the oil it allegedly contains will ever be within this Court's jurisdiction." *See* Dkt. 25 in Case No. 02-cv-2160. As noted to the Hoglan Creditors on June 15,

6

York, let alone the United States, the Deposition Subpoena must be quashed. *See* Dkt. 380 (Graham Declaration) ¶¶ 5-6; *see also* https://www.fleetscape.com (noting that Fleetscape has offices in London and Frankfurt).[6]

## II. THE DEPOSITION SUBPOENA IMPOSES AN UNDUE BURDEN ON THE RESPONDENTS

The Deposition Subpoena also imposes an undue burden on the Hoglan Creditors because it is unrelated to the judgment debtors or their property and is therefore beyond the permissible scope of inquiry in this context. As previously noted, subpoenas served pursuant to Rule 69 must comply with Rule 45. *Ungar*, 400 F. Supp. 2d at 548 (S.D.N.Y. 2005). Rule 45 requires a court to quash a subpoena where it subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). "The burden to demonstrate the relevance of the requested material lies with the party issuing the subpoena; the burden to show that the request is impermissible lies with the non-party opposing the subpoena." *Phoenix Bulk Carriers (BVI) Ltd. v. Triorient, LLC*, No. 20-cv-0936, 2021 U.S. Dist. LEXIS 29582, at *7 (S.D.N.Y. Feb. 17, 2021). The decision to limit post-judgment discovery is within the district court's discretion. *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012).

In the judgment enforcement context, although discovery in aid of enforcement is broad, "the rules do not provide judgment creditors with unfettered license to go on a 'fishing

---

given that there is no genuine dispute that Respondents do not possess or have custody of the vessel or its cargo, OCM believes that a deposition of Mr. Graham is unwarranted at this time in either proceeding.

[6] In addition, insofar as the Hoglan Creditors seek to compel a non-party citizen and resident of the United Kingdom concerning foreign activities and entities, to be produced in order to provide testimony in this matter other than voluntarily, the Hoglan Creditors have not but would need to comply with the Hague Convention on the Taking of Evidence Abroad. *See In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 Civ. 5571, 2004 U.S. Dist. LEXIS 26077, *4-5 (S.D.N.Y. Dec. 29, 2004) (finding that corporate employees in France designated under Rule 30(b)(6) must be deposed pursuant to Chapter II of the Hague Convention); *Laker Airways, Ltd. v. Pan American World Airways*, 607 F. Supp. 324, 326-27 (S.D.N.Y. 1985) (vacating subpoenas purporting to be served in New York that were directed at foreign non-parties concerning actions conducted entirely abroad).

7

expedition,'" *Phoenix Bulk Carriers*, 2021 U.S. Dist. LEXIS 29582, at *7. Rather, discovery under Rule 69 must be "calculated to assist in collecting on a judgment." *EM Ltd.*, 695 F.3d at 207. CPLR § 5223 enables a judgment creditor to seek disclosure of "all matter relevant to the satisfaction of the judgment" by serving "upon any person" a subpoena. Both state and federal courts applying New York law have noted, however, that although CPLR § 5223 permits broad discovery, it is not unlimited in scope. *See, e.g.*, *Deutsche Bank AG v. Sebastian Holdings Inc.*, No. 161079/2013, 2017 N.Y. Misc. LEXIS 441, at *2-3 (N.Y. Sup. Ct. Feb. 3, 2017) ("[d]espite the generous standard of CPLR 5223, the New York courts have also held that information subpoenas are improper to the extent that they seek information regarding persons or entities who are not the judgment debtor"); *Estate of Ungar v. The Palestinian Auth.*, No. 105521/2005, 2009 N.Y. Misc. LEXIS 4490, at *10 (N.Y. Sup. Ct. Dec. 17, 2009) (observing that personal jurisdiction "is beyond the scope of inquiry permitted by CPLR by 5223"); *Wagner v. Chiari & Ilecki*, LLP, 973 F.3d 154, 158 (2d Cir. 2020) ("While New York law thus 'permits [a] creditor a broad range of inquiry through either the judgment debtor or any third person with knowledge of the debtor's property the discovery pursued must be 'relevant to the judgment debtor's income and property.'") (internal citations omitted). Therefore, post-judgment discovery of non-parties is "limited to a search for the judgment debtor's hidden assets." *Phoenix Bulk Carriers*, 2021 U.S. Dist. LEXIS 29582, at *7 (quoting *GMA Accessories v. Elec. Wonderland, Inc.*, No. No. 07-cv-3219, 2012 U.S. Dist. LEXIS 72897, at *14 (S.D.N.Y. May 22, 2012)).

Here, the Deposition Subpoena imposes an undue burden on the Respondents because it is entirely unrelated to the identification of assets of the Judgment Debtors— instead the deposition seeks information relating to the Respondents' jurisdictional contacts with New York under circumstances where the Hoglan Creditors have not made a *prima facie* showing of

8

jurisdiction, and where the Turnover Motion pending before the Court remains subject to dismissal on other dispositive grounds. The subpoena is accordingly outside the permissible scope of discovery and cumulative of discovery already provided. The Hoglan Creditors are first required to make a *prima facie* showing of personal jurisdiction over the Respondents before they are entitled to jurisdictional discovery. *Jazini by Jazini v. Nissan Motor Co.,* 148 F.3d 181, 186 (2d Cir. 1998). These matters have likewise been fully briefed and are pending before the Court. A deposition of Mr. Graham would provide no additional information of consequence, given among other things that the property the Hoglan Creditors seek is not in the possession or custody of any Respondent.

### III. THE DEPOSITION SUBPOENA IS NOT VALID BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER THE RESPONDENTS

Finally, the Deposition Subpoena must be quashed because this Court lacks personal jurisdiction over the Respondents. *Ungar*, 400 F. Supp. 2d at 552 (quashing subpoena for lack of personal jurisdiction over foreign non-party corporation). It is well-established that "the subpoena power of a court cannot be more extensive than its jurisdiction." *Vera v. Republic of Cuba*, 867 F.3d 310, 316 (2d Cir. 2017). When evaluating whether a federal court has jurisdiction to issue a subpoena to a foreign non-party under Rule 69, courts in the Second Circuit look to the personal jurisdiction rules of the forum state. *Ungar*, 400 F. Supp. 2d at 547; *Townsend Farms, Inc. v. Göknur*, No. 20-MC-75, 2020 U.S. Dist. LEXIS 232288, at *4-5 (S.D.N.Y. Dec. 9, 2020) ("an action to enforce a judgment pursuant to Rule 69 of the Federal Rules of Civil Procedure does not expand the Court's ability to exercise personal jurisdiction over a party").

Therefore, the validity of the subpoena issued to the Respondents turns on whether they are subject to New York's long-arm statute. *Ungar*, 400 F. Supp. 2d at 547 (observing that

9

"when enforcing a judgment under Rule 69, federal courts have not applied broader jurisdictional reach than state enforcement provisions would otherwise allow"). Under CPLR § 302(a)(1), a court must decide (i) whether the defendant "transacts any business" in New York and, if so, (ii) whether this cause of action "aris[es] from" such a business transaction. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). Under New York law, a claim arises from a transaction where there is a substantial relationship between the transaction and the claim asserted" however a connection that is "merely coincidental" is insufficient to support jurisdiction. *Id.* at 249.

In order to take any discovery, including jurisdictional discovery, the Hoglan Creditors must make a *prima facie* showing of jurisdiction. *Jazini*, 148 F.3d at 186 (noting that absent a *prima facie* showing of personal jurisdiction a party is not entitled to take jurisdictional discovery from a foreign corporation); *see also Ungar*, 400 F. Supp. 2d at 549 (assessing whether the judgment creditors satisfied their burden to make a *prima facie* showing of personal jurisdiction when evaluating a motion to quash subpoenas).

Respondents have previously addressed the Hoglan Creditors' failure to meet their burden of establishing a *prima facie* showing of personal jurisdiction in their papers in opposition to the Turnover Motion, submitted on March 28, 2022, Dkts. 378-380, and it remains the case that the Hoglan Creditors have not made the required showing that this Court has personal jurisdiction over Respondents pursuant to CPLR § 302(a)(1). First, neither FSR nor Fleetscape Holdings conduct any business within the state of New York. Dkt. 379 at ¶ 3; Dkt. 380 ¶¶ 5-6. Second, although OCM maintains an office in New York, its contacts with the forum are insufficient to establish jurisdiction because its role as an investment adviser to funds having exposure to the financing involving the Vessel is "merely coincidental."

## **CONCLUSION**

For the foregoing reasons, the Court should quash the deposition subpoena of Martin Graham, and grant Respondents such other and further relief as is just and proper.

July 1, 2022
New York, New York

        SEWARD & KISSEL LLP

        By:  *s/ Bruce G. Paulsen*
           Bruce G. Paulsen (paulsen@sewkis.com)
           Brian P. Maloney (maloney@sewkis.com)
           One Battery Park Plaza
           New York, New York 10004
           (212) 574-1200

        *Attorneys for Respondents Oaktree Capital*
        *Management, L.P., Fleetscape Capital Holdings*
        *Limited, and Fleetscape Suez Rajan LLC*